## MERCHANTS' BANK v. BERGEN COUNTY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE
SOUTHERN DISTRICT OF NEW YORK.

Argued October 27, 1885.—Decided November 16, 1885.

The *bona fide* holder, for value, of a bond of a municipal corporation, con-
taining no recitals, apparently one of a series issued under authority of an
act of the legislature of the State, but actually issued in excess of the
number of bonds authorized by that act, and as security for the personal
debt of a fiscal officer of the corporation to the holder, is not protected in
his holding, and cannot cast upon the county the consequences of his own
mistake.

This was a suit in equity to compel the Merchants' Exchange
National Bank of the City of New York, one of the defendants
below, and the appellant here, to surrender to the board of
chosen freeholders of the county of Bergen, New Jersey, one
hundred and two bonds of $500 each, drawn in the form of,
and purporting to be, negotiable obligations of the board, on
the ground that they were never issued by its authority. The
suit was brought, not only against the bank which held the
bonds, but also against the sheriff of the city and county of
New York, who had previously levied an attachment upon
them in an action brought by the bank against Benjamin C.
Bogert, upon his alleged indebtedness to it of $51,000.

The sheriff, having no interest in the controversy between
the board and the bank, made no contest and did not appear
in the suit. The decree was therefore only against the bank.

The facts of the case were briefly these: The complainant
below, the board of chosen freeholders of Bergen County,
was a municipal corporation having general charge of the
affairs of that county. It was composed of thirteen represent-
atives, one from each township of the county. Its officers were
a director and a clerk elected by the board, the former from
one of its own members. It also elected annually a collector,
who acted as treasurer of the county, but was not a member
or an officer of the board. It was his duty to collect the
revenues of the county and to pay its expenses and liabilities.

During the late civil war, bonds were issued by the board of

chosen freeholders of Bergen County for money to enable it to raise and equip its quota of men under the different calls for troops by the government. These bonds were about to mature when the legislature, by an act passed on the 5th of April, 1876, authorized the boards of chosen freeholders of the several counties of the State to renew bonds previously issued by them for any loan made by them under authority of law, which should thereafter become due, and for which no provision should be made for their payment. The act required that the new bonds should be made payable within thirty years from date, and be so issued that three and one-third per cent. thereof should become due and payable each year; that they should draw interest not exceeding seven per cent.; should bear the seal of the corporation; be signed by the director of the board and its clerk, and countersigned by the collector of the county, and have coupons attached to each one for the semi-annual interest, except that, when the board might judge it best, the bonds might be registered and be made payable to the order of the purchaser and issued without coupons. The act declared that all bonds issued under it should be numbered, and a register of the number, denomination, date of issuing, and name of person to whom issued, if registered, and time of payment, should be made by the collector in a book to be provided by the board for that purpose.

On the 10th of May, 1876, the board of Bergen County passed a resolution empowering its finance committee to reissue county bonds in place of those becoming due on July 1 of that year. Blanks for 800 bonds each for $500, with coupons attached, were accordingly prepared by order of the committee and bound in three books, with a margin or stub to each bond. The first book contained the blanks from 1 to 250; the second from 251 to 500, the third from 501 to 800, and these numbers were stamped on the backs of the books respectively. The name of the payee and the year of maturity were left unfilled in the blanks. These books were delivered to Benjamin C. Bogert, who was at the time collector of the county. James Vanderbeek was then director of the board, and Michael M. Wygant its clerk.

At different times during the months of July and August, 1876, the three books were produced by Bogert at the room of the finance committee in the court house at Hackensack, the county seat of Bergen County, and there all the 800 bonds in blank were signed by Vanderbeek, the director, and by Wygant, the clerk. This was done at the request of Bogert, who represented that this course was advisable, as some of the blanks might be injured or soiled before they were issued, he agreeing to destroy all the unused blanks. The director and the clerk both seemed to have implicit confidence in the integrity of Bogert, and it does not appear that there was any hesitation on their part to comply with his suggestion. The books with the blanks in this condition were left in his hands, but they had neither the seal of the county nor his signature. These were to be attached as the bonds were issued. The outstanding bonds of the county at the time amounted to $362,-000, of which sum $14,000 were paid in cash. To meet the balance, 696 bonds were issued, and, with the exception of two of them, were exchanged for the old bonds. Two were sold and the proceeds applied towards the payment of the balance. A register of the bonds thus issued was prepared, as required by law, containing a tabulated statement of the number of each one, to whom issued, with its amount and date of maturity, and was kept by the collector, and was open to inspection by the public.

Of the blanks not used, 104 were left in the possession of Bogert. Two of these were substituted in place of others defaced in preparation. Of the remaining 102 blanks none were required or used for the county, nor was their use ever authorized in any form by its board of chosen directors. Yet, on the 26th of July, 1876, Bogert pledged 66 of them to the Merchants' Exchange Bank as security for a loan made to him individually for $30,000. Payments on this amount were made from time to time until, on May 9, 1878, it was reduced to $9000. Soon afterwards, however, $2000 more were added to this sum, and all the bonds were taken up except twenty-four. Previously to the loan, and on the 14th of March, 1876, Bogert had borrowed of the same bank $40,000, and

given as collateral two documents purporting to be temporary loan certificates of Bergen County, each for $20,000. Certificates of this character had on different occasions been authorized by boards of chosen freeholders to raise money in anticipation of the collection of taxes. The two certificates, however, pledged to the bank were fictitious and fraudulent papers, never having been authorized by the board. In May, 1878, Bogert was defeated as collector of the county and another party took his office. After that, and on the 28th of September following, at his request, the two loans were consolidated into one, for which he gave a new note for $51,000; took up the fictitious loan certificates, and in their place deposited with the bank, as collateral, seventy-eight of these county bonds. Thus the bank held 102 of them.

Bogert died January 8, 1880, and soon afterwards the issue of these 102 bonds, and their possession by the bank, were discovered, and the present suit was brought to compel their surrender. The court below held the bonds void, and decreed that they be delivered up to the complainants. From this decree an appeal was taken to this court.

*Mr. S. P. Nash* and *Mr. E. L. Fancher* [*Mr. Alfred J. Taylor* was with them on the brief] for appellant.

I. The bonds in controversy were authorized by an act of the legislature of New Jersey, applicable to all the counties of the State. The act imposed no condition precedent to the exercise of the power, and no officials were required to concur in the issuing of the bonds, except those entrusted with the general authority of the county. The case, therefore, was governed by the doctrine of *Commissioners of Knox County* v. *Aspinwall*, 21 How. 539, that where such bonds are issued by the proper officials and import a compliance with the law, a purchaser is not bound to look further. See also *East Lincoln* v. *Davenport*, 94 U. S. 801; *Brooklyn* v. *Insurance Co.*, 99 U. S. 362; *Hoff* v. *Jasper County*, 110 U. S. 53. A recital in a bond may furnish a basis for estoppel, but it is not essential to an estoppel. See *Hackett* v. *Ottawa*, 99 U. S. 86.

II. The court below accordingly erred in holding that the

county could defeat the bonds because they contained no recitals. This case differs from *Northern Bank* v. *Porter*, 110 U. S. 608 ; and *Dixon County* v. *Field*, 111 U. S. 83. There was in this case no vote required, there was no certificate made necessary, the bonds were of the kind authorized, the only difficulty being that more than were needed were executed in due form and left in the control of the officer who had the general authority to negotiate the entire lawful issue. In *County of Henry* v. *Nicolay*, 95 U. S. 619, 626, county bonds were issued to a railroad company and sold by its agents. The purchaser, said BRADLEY, J., was " apprised by the law that power existed in the county court to issue such bonds, without any election. of the people ; and there was nothing on their face to show that they were not regularly issued."

III. The case presented here, therefore, is the same that would arise upon a similar transaction where individuals were concerned. When one of two innocent persons is to suffer from the wrong or negligence of a third, it shall be the one who enabled the wrongdoer to commit the wrong. *Michigan Bank* v. *Eldred*, 9 Wall. 544 ; *Dair* v. *United States*, 16 Wall. 1.

IV. The negligence of the board of chosen freeholders was gross, and enabled the collector to commit the frauds. The doctrine of estoppel applies in favor of *bona fide* holders, who dealt with Bogert on the faith of the apparent ownership and authority thus obtained.

V. The same equitable estoppel applies to the so-called temporary bonds with which the board entrusted him. Bogert induced appellants to loan him $40,000 on these bonds, and his check on appellants for that amount went directly to pay the Bergen County Bank. This amount was already charged to him as collector, and the money went to his credit with the county.

VI. The bonds legally issued under the act of 1866 ($644,-700) were maturing from time to time, and the coupons on them were falling due periodically. It was within the province of the board to raise money to meet these obligations and so to avoid legal proceedings. The proceeds of the temporary bonds went to the uses of the county, and therefore the bank could have enforced the two bonds for $20,000 each, for which

the others were afterwards substituted.    In this view, it is unimportant whether the seventy-eight bonds were delivered to the bank before or after Bogert ceased to be collector.    The bank was entitled to be treated as holding the obligations which it surrendered in exchange for them.

VII. The county ought to be liable, even assuming that the bonds were countersigned by Bogert, and received by the bank, after his term of office had expired.    The countersigning the bonds was a simple ministerial act which related back to July 1, 1876, the date and time of issue of the bonds.    Bogert was county collector at the date of the bonds, and for more than twenty months afterwards.    The coupons bear his genuine *facsimile*, affixed while he was county collector, and accepted by the board of chosen freeholders.    *Wayauwega* v. *Ayling*, 99 U. S. 112.    In *Anthony* v. *Jasper County*, 101 U. S. 693, the bonds had features upon their face which showed that they had been antedated to evade a requirement of registration.

VIII. The bonds held by appellant are, in a commercial sense, negotiable paper.    *Lynde* v. *The County*, 16 Wall. 6. When such bonds are valid on their face they are presumed to be valid.    *Nichols* v. *Mase*, 94 N. Y. 160, 164.    Bogert had lawful custody of the bonds when negotiated.    The fact that he was an officer of Bergen County did not throw suspicion on his title or his statements as to the bonds.    *Railway Co.* v. *Sprague*, 103 U. S. 756.    Nor did his personal knowledge, though a director of the bank, affect the bank.    *Atlantic State Bank* v. *Savery*, 82 N. Y. 291, 307.    It is not competent to show fraud or irregularity in the issuance of bonds as against a *bona fide* holder.    A *bona fide* purchaser takes them freed from any infirmity in their origin.    *County of Macon* v. *Shores*, 97 U. S. 272; *Cromwell* v. *County of Sac*, 96 U. S. 51.

IX. The complainant below appealed to the equitable jurisdiction of the court.    But he that seeks equity must do equity. If the doctrine of equitable estoppel applies, the bank is the sufferer from a wrong which the county enabled its trusted agent to commit.    It ought in equity to repair that wrong, by paying the amount for which the bank is a *bona fide* holder of the bonds in question.

X. But if the county insists on its legal rights, it should be left to its legal rights. Upon its own contention it has a legal defence to the bonds and no ground of equitable relief. *Grand Chute* v. *Winegar*, 15 Wall. 373; *New York Guarantee Co.* v. *Memphis Water Co.*, 107 U. S. 205, 214. At law, the credibility of H. Myers Bogert could be passed upon by a jury. The appellants, therefore, submit that the bill of the complainants below should have been dismissed.

*Mr. J. D. Bedle* and *Mr. Hamilton Wallis* for appellee.

MR. JUSTICE FIELD delivered the opinion of the court. He stated the facts in the language above reported, and continued:
There was evidence at the hearing, of a very persuasive character, that the seventy-eight bonds deposited with the bank on the 28th of September, 1878, when the two loans of Bogert were consolidated, were not signed by him, and that the seal of the county was not attached, until after he had ceased to be collector. Our judgment leads to that conclusion. If this be the fact, they fall within the rule in *Anthony* v. *County of Jasper*, 101 U. S. 693, 699, where the court said, that "purchasers of municipal securities must always take the risk of the genuineness of the official signature of those who execute the paper they buy. This includes not only the genuineness of the signature itself, but the official character of him who makes it." But, in the view we take of this case, it is not material whether the bonds were signed before or after Bogert had ceased to be collector. The board of chosen freeholders of the county never directed nor permitted their issue. The law under which it derived all its powers provided only for the issue of bonds to meet the indebtedness from those then about to mature. All such maturing bonds had been surrendered for the new bonds, except for a small amount, which was paid in cash. The power of the board under the law was then exhausted. Any further issue was beyond its authority. Unless, therefore, there is something in connection with their issue to estop the board from contesting their validity, they can in no manner bind the county. This is not a case where

there existed in the board a general power to issue negotiable securities of the county, so that parties would be justified in taking them when properly executed in form by its officers. It is a case where there was no power, except as specially delegated by law for a particular purpose. All persons taking securities of municipalities having only such special power must see to it that the conditions prescribed for the exercise of the power existed. As an essential preliminary to protection as a *bona fide* holder, authority to issue them must appear. If such authority did not exist, the doctrine of protection to a *bona fide* purchaser has no application. This is the rule even with commercial paper purporting to be issued under a delegated authority. The delegation must be first established before the doctrine can come in for consideration. See case of *The Floyd Acceptances,* 7 Wall. 666, 676; *Marsh* v. *Fulton,* 10 Wall. 676; *Mayor* v. *Ray,* 19 Wall. 468.

There is a class of cases where recitals in obligations are held to supply such proof of compliance with the special authority delegated as to preclude the taking of any testimony on the subject, and estop the obligor from denying the fact. These have generally arisen upon municipal bonds, authorized by statute, upon the vote of the majority of the citizens of a particular city, county, or town, and in which certain persons or officers are designated to ascertain and certify as to the result. If, in such cases, the bonds refer to the statute, and recite a compliance with its provisions, and have passed for a valuable consideration into the hands of a *bona fide* purchaser, without notice of any defect in the proceedings, the municipality has been held to be estopped from denying the truth of the recitals. The ground of the estoppel is, that the officers issuing the bonds and inserting the recitals are agents of the municipality, empowered to determine whether the statute has been followed, and thus bind the municipality by their determination. See of the late cases on this point *Northern Bank of Toledo* v. *Porter Township Trustees,* 110 U. S. 608, and *Dixon County* v. *Field,* 111 U. S. 83.

In the bonds of Bergen County there are no recitals. The bank in taking them was bound to ascertain whether or not

they were authorized. Had it examined the register of the
bonds issued to take up the matured bonds, which was a pub-
lic record of the county and open to inspection, it would have
learned that the bonds which it received were not of the num-
ber thus authorized. Content to rely upon the unsupported
representations of Bogert, it cannot now cast upon the county
the consequences of its own mistake. *Buchanan* v. *Litchfield*,
102 U. S. 278.

*Judgment affirmed.*