CITIZENS' SAVINGS BANK · v. CITY OF NEWBURYPORT.

CITY OF NEWBURYPORT v. CITIZENS' SAVINGS BANK.

(Circuit Court of Appeals, First Circuit.   May 12, 1909.)

Nos. 783, 784.

1. BILLS AND NOTES (§ 123*)—NOTES OF CITY—SIGNING BY OFFICER.

Notes of a city were in the form of a promise by the city to pay "to the order of J. V. Felker, City Treas.," and, when negotiated, the notes were indorsed in blank, "J. V. Felker, City Treas." *Held*, that the treasurer's name was only used to give the notes currency, and that they became payable to bearer under the law merchant, and passed by delivery.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 447; Dec. Dig. § 188.*]

2. COURTS (§ 312*) — FEDERAL COURTS — CHOSES IN ACTION—ASSIGNMENT—NE-GOTIABLE NOTES.

The rule applied that notes of a city payable to bearer are excepted from Judiciary Act Aug. 13, 1888, c. 866, 25 Stat. 433 (U. S. Comp. St. 1901, p. 508), declaring that an assignee of a chose in action cannot sue in a federal court unless his assignor could have done so, whether the notes were first negotiated to a citizen of a state other than that of the maker or not.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 868; Dec. Dig. § 312.*]

3. MUNICIPAL CORPORATIONS (§ 60*) — ORDINANCES — POWERS OF SUBSEQUENT CITY COUNCIL.

An ordinance declaring that a finance committee shall be appointed at the commencement of each municipal year to negotiate all loans to the city which may be authorized by the city council could not deprive a subsequent council of its right to pass an order authorizing the city treasurer, with the approval of the finance committee, to borrow from time to time sums not exceeding $160,000 in anticipation of taxes.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 60.*]

4. MUNICIPAL CORPORATIONS (§ 908*)—LOANS—PROCEEDINGS OF CITY COUNCIL.

Defendant council on January 1, 1906, ordered that the city treasurer, with the approval of the finance committee, borrow, in anticipation of taxes, a sum not exceeding $160,000, evidenced by notes of the city to be discounted, etc.   On January 9th the finance committee gave the mayor authority to approve for the finance committee all notes of the city duly negotiated on any loan made for or in the city's behalf, and at the same meeting voted that the mayor and city treasurer be authorized to negoti-ate notes under the order of the city council passed January 1, 1906, from time to time as required.   *Held*, that the first vote was general, and was therefore superseded by the second, which covered everything re-quired by the council's order of January 1st, so that notes executed by the mayor and· city treasurer and approved by the mayor for the finance committee were valid obligations of the city.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1896;  Dec. Dig. § 908.*]

5. COURTS (§ 372*)—FEDERAL COURTS—RULES OF DECISION—DECISION OF STATE ·COURTS.

The rule applied that where, in an action on city notes, defendant claim-ed that the city was not liable because the notes sued on constituted an overissue, but the facts concerning such defense were not known to plain-tiffs when they purchased the notes and they did not appear on the face thereof, plaintiffs' right to recover in a federal court was not a question of local law, but of general law concerning the rights of bona fide holders

of commercial paper, concerning which the federal courts are not bound by local decisions.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 979; Dec. Dig. § 372.*

State laws as rules of decision in federal courts. see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

6. MUNICIPAL CORPORATIONS (§ 948*)—NOTES OF CITY—OVERISSUE—BONA FIDE PURCHASERS—DEFENSES.

A city treasurer, with the approval of the city's finance committee, was authorized to borrow sums in anticipation of taxes, not exceeding $160,000. The committee then voted that the mayor and city treasurer should negotiate notes in accordance with such provision, whereupon notes were executed payable to bearer, each of which was numbered and was accompanied by a statement of the treasurer certifying that the total amount borrowed under such authorization, including the note certified, was an amount within that authorized. The city, however, maintained no independent register of the notes, so that there was no method by which a purchaser could ascertain whether there was an overissue, either as to the extent of the loan or with respect to the gross amount of the notes. *Held*, that the fact that some of the notes constituted an overissue was no defense as against a bona fide holder.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 948.*

Bona fide purchasers of municipal bonds, see note to Pickens Tp. v. Post, 41 C. C. A. 6.]

7. MUNICIPAL CORPORATIONS (§ 948*)—DISCOUNT—PROCEEDS—DISPOSITION.

A purchaser of notes executed by a municipal corporation is not bound to follow a check given therefor and see that the proceeds are not used to pay a note of the city which was an illegal issue and had been deposited in the bank in which the check was deposited, for collection.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 948.*]

8. MUNICIPAL CORPORATIONS (§ 948*)—ORDINANCES—STATUTORY PROVISIONS.

There being no statutory provision corresponding to a city ordinance providing that no money shall be drawn out of the city treasury except on the written order of the mayor addressed to the treasurer and countersigned by the city clerk, a bona fide holder of negotiable paper issued by the city is not required to assure himself that a warrant has issued in accordance with such provision before accepting payment through the bank which he has employed for its collection.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 948.*]

In Error to the Circuit Court of the United States for the District of Massachusetts.

Edward F. McClennen (Brandeis, Dunbar & Nutter, on the brief), for Citizens' Savings Bank.

Robert G. Dodge (Saltonstall, Dodge & Carter and Mr. Withington, City Sol., on the brief), for City of Newburyport.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

PUTNAM, Circuit Judge. These two writs of error arose out of certain purchases by the Citizens' Savings Bank of what were apparently promissory notes of the city of Newburyport. Suit was brought

by the bank, and in that suit the city filed an account in set-off, the details of which we will refer to hereafter.

Questions of jurisdiction are raised. The bank's declaration contains seven counts, four of which are directly on promissory notes. The other three are of a mixed character, apparently seeking to recover the money advanced by the bank, going back of the notes in case they are held to be void. These counts we need not consider, in view of the conclusion we have reached as to the preceding counts. The notes declared on were in the form of a promise by the city to make payment "to the order of J. V. Felker, City Treas.," and the same, when negotiated, were indorsed in blank, "J. V. Felker, City Treas." Although, under some circumstances, with such a signature it might be held that Felker was personally liable on the notes, yet it is plain his name was used only to give the notes currency; and it is settled in the federal courts that his indorsement has no other effect. Falk v. Moebs, 127 U. S. 597, 8 Sup. Ct. 1319, 32 L. Ed. 266. Therefore, the notes in suit were in substance the same as though they had been made payable to the city of Newburyport in terms, and indorsed by it in blank before they were negotiated. By the law merchant this makes them notes payable to bearer, which pass by delivery without any indorsement or any form of assignment.

The jurisdictional inhibition of Act Aug. 13, 1888, c. 866, 25 Stat. 433 (U. S. Comp. St. 1901, p. 508), does not reach notes payable to bearer and made by a corporation; and these notes were payable to bearer by the law merchant, and were made by a corporation; that is, the city of Newburyport. Lake County v. Dudley, 173 U. S. 243, 250, 19 Sup. Ct. 398, 43 L. Ed. 684. The exception from the inhibition of the statute is not limited by any of its terms to a case where the notes are first negotiated to a citizen of a state other than the state of which the quasi corporation is a citizen; and, by the very nature of the statutory provision on this particular point, it could not be, because, if it were, it would be mere surplusage. On the whole, the settled practice of the federal courts is against the contention of the city on this proposition as to the jurisdiction of the Circuit Court.

The notes sued on were issued in accordance with section 6, c. 27, of the Revised Laws of Massachusetts, as follows:

"Sec. 6. Cities and towns may by a majority vote incur debts for temporary loans in anticipation of the taxes of the municipal year in which such debts are incurred, and expressly made payable therefrom by such vote. Such loans shall be payable within one year after the date of their incurrence, and shall not be reckoned in determining the authorized limit of indebtedness."

The ninth section of the same chapter gives directions with reference to certain methods of issuing municipal loans, which require that the bonds or notes or scrip shall be signed by the municipal treasurer, and, if issued by a city, countersigned by its mayor. It also provides that the notes shall carry interest payable semiannually, and shall be sold at not less than par. This, however, relates to the permanent indebtedness of the municipality, and not to the specific class of notes in question here, which are governed entirely by the sixth section.

with which all the municipal proceedings and notes involved here comply strictly on their face.

The notes on which the verdict was rendered for the plaintiff bear the numbers 796, which is for $25,000, and 797, 798, and 799, each of which is for $10,000; and all of them bear date April 13, 1906. They were all negotiated with another note of the same form for $25,000, and of the same date, but of an earlier number, 795. The total of the five notes, as will be seen, was $80,000. They were negotiated in one lot, at Boston to Blake Bros. & Co. of that city. We are not aware whether the record shows that these notes were purchased by Blake Bros. & Co. for themselves and subsequently sold to the plaintiff, or whether they were bought at the outset for the plaintiff. It is of no importance to this case how this may have been. The negotiations were covered by three letters, given in the record and explained therein as follows:

"[On letter paper entitled 'City of Newburyport, Office of City Treasurer and Collector of Taxes, City Hall, Newburyport, Mass.,' and containing an imprint of the city seal.]

"April 9, 1906.

"Messrs. Blake Bros. & Co., Boston, Mass.

"Gentlemen: Would be pleased to receive your lowest offer to discount City of Newburyport note or notes aggregating $80,000, to be dated Apl. 13, 1906, on six months time. Your bid to be received on or before eight o'clock, Wednesday evening, April 11th, 1906.

"Very truly yours,                    J. V. Felker, City Treas."

"Office of Blake Brothers & Co., 48 State Street.

"Boston, April 11, 1906.

"J. V. Felker, Esq., City Treasurer, Newburyport, Mass.

"Dear Sir: Referring to your letter of the 9th inst., we will discount notes of the city of Newburyport to the amount of eighty thousand dollars ($80,-000), said notes to be dated April 13, 1906, and payable in six months in Boston, at the rate of four and fifty-four one-hundredths per cent ($4 \frac{54}{100}$ %) per annum.

"Our bid is made subject to our being satisfied that the loan is legally issued, that we are furnished all papers necessary to show the same, and is for the whole amount, $80,000, and not for any part thereof.

"In case our bid is accepted, we will advise you as to what denominations we would like, and the notes are to be payable or indorsed to our order.

"Kindly send us a list of the bid and bidders, and oblige.

"Yours very truly,                    Blake Bros. & Co."

"Newburyport, Mass., April 11, 1906.

"Messrs. Blake Bros. & Co., Boston, Mass.

"Gentlemen: Your offer to discount the notes of the city of Newburyport of $80,000, dated Apl. 13, 1906, on six months time at a rate of $4 \frac{54}{100}$% per annum is hereby accepted.

"Kindly telephone me as early as convenient tomorrow forenoon what denominations you would like them. I will deliver them on Thursday forenoon.

"Yours very truly,                    J. V. Felker, City Treas."

The $80,000 specified in these letters covered note 795 for $25,-000, already referred to. We are not aware that the record shows where it is. As, however, the question in this case is really one of overissue, it is not impossible that that note is entitled to priority over those in suit. The computation of the defendant at one place makes the overissue $18,475, and at another $18,000. Which of these two is correct is not important. If the transaction with Blake Bros. & Co.

was that of a sale in one lump of $80,000 of notes, the matter is divisible in the eyes of the law, and only the last two notes of $10,000 each would in any event be lost to the plaintiff, after securing to note 795 its apparent priority. In view of the fact that the defendant contends that, unless the plaintiff can recover specifically on the notes in question, it cannot recover in an action of the nature of one for money had and received, or in any other action for any part of the cash paid out for the notes, and as such is apparently the law, it would be an injustice so gross to compel the parties holding the notes here to make an entire loss of $80,000 for an overissue of the amount stated, less than $19,000, that we are of the opinion that, if it were necessary to resort to such an application of the law, the law would hold the transaction divisible, and due priority secured, and that the breaking up of the notes as they were in fact broken up, with the numerical order given them which was given them, would render such a division practical, and would point out the way in which it could be accomplished; so that, in any event, nothing would be lost except the two notes last in numerical order of $10,000 each. However, the conclusion we have reached does not render it necessary for us to follow this view of the matter to its conclusion, and we refer to it only that it may be understood that it has not been overlooked.

The next thing in the order of statement is an ordinance of the city of Newburyport, established in 1869, a part of which is as follows:

"There shall be appointed at the commencement of each municipal year, a committee on finance consisting of the mayor, one member of the board of aldermen and five members of the common council, which committee shall negotiate all loans to the city which may be authorized by the city council, and shall report the same to the city treasurer."

This provides that the committee on finance should negotiate all loans; but, in view of the following order, this ordinance becomes immaterial, because it cannot be maintained that an ordinance of one city council can deprive a subsequent city council of its right to exercise the inherent powers vested in it by the laws of the state, according to the various circumstances as they arise from time to time. Therefore, we turn to the following order of the city council and votes of the committee on finance. The order was as follows.

"In City Council,
"City of Newburyport, Mass., January 1, 1906.

"Ordered, that for the purpose of procuring a temporary loan to and for the use of the city of Newburyport in anticipation of the taxes of the present municipal year, the city treasurer is hereby authorized and directed to borrow from time to time, with the approval of the committee on finance, a sum or sums in the aggregate not exceeding one hundred and sixty thousand dollars, with renewals thereof; and to execute and deliver the note or notes of the city therefor, payable within one year from the time the loan is made, with interest thereon, or discounted at a rate not exceeding six per cent. per annum. The said debt or debts incurred by a loan or loans to the city under this order are to be paid from the said taxes of the present municipal year."

It is not questioned that this order was duly passed by the authoritative boards of the city, and duly approved by the mayor, and that the proceedings so far were strictly in accordance with the law. By the

ordinance this committee was to negotiate the loans, but by the order the treasurer was to borrow; and he thus became the actor, the committee only approving.

On January, 9, 1906, the committee on finance passed this vote:

"In Committee on Finance, January 9, 1906.

"Ordered, that his honor the mayor be authorized to approve, for the committee on finance, all notes of the city of Newburyport duly negotiated on any loan made for or in behalf of the city."

The committee also passed at the same meeting on January 9, 1906, the following:

"Voted that the mayor and city treasurer be authorized to negotiate notes under the provisions of the order of the city council passed January 1, 1906, from time to time as may be required."

Very considerable discussion has been made by the parties with reference to the first of the above votes in regard to the approval of the city's loans in general, while the greater importance of the second vote of the same date, concerning the negotiation of the particular notes in suit, has been apparently overlooked. The first vote is of a general character, which, according to the ordinary rules of construction, was in part superseded by the second, which was of a limited character, with specific relation to notes of the issue in litigation here. We need not, therefore, further regard the first of the two votes if the second covers everything required by the order of the city council of January 1, 1906; and we find that it does.

Each note on which the plaintiff was allowed to recover, aside from the amount named and the serial number, bore the same date, and was of the same form, as the note for $25,000 here given. Each was accompanied with the same papers. Thus the notes as they were negotiated were not only apparently approved for the committee on finance by the mayor, but they were signed on behalf of the city by both the city treasurer and the mayor, in strict accordance with the second vote of that committee of January 9th. It will be seen also that, with each note, there went copies of the order of January 1, 1906, of the proceedings showing its proper adoption, and of the vote of the committee on finance authorizing the mayor to approve all notes, and a certificate from the city treasurer showing that each note was within the limit of $160,000 specified in the order. The note for $25,000 and the papers we have named were all thus connected, and were as follows:

"$25,000.                    Newburyport, Mass., April 13th, 1906.

"For value received, the city of Newburyport, by its treasurer, promises to pay J. V. Felker, City Treas., or order, twenty-five thousand dollars, in six months without grace, at the First National Bank of Boston.

"J. V. Felker, City Treasurer.
"W. F. Houston, Mayor."

"Approved for Committee on Finance.
"No. 796.                          W. F. Houston, Mayor."
    [Indorsed on back:]            "J. V. Felker, City Treas."

"In City Council,
"City of Newburyport, Mass., January 1st, 1906.

"Ordered, that for the purpose of procuring a temporary loan to, and for the use of the city of Newburyport, in anticipation of the taxes of the present municipal year, the city treasurer is hereby authorized and directed to borrow

from time to time, with the approval of the committee on finance, a sum or sums, in the aggregate not exceeding one hundred and sixty thousand dollars, with renewals thereof, and to execute and deliver the note or notes of the city therefor, payable within one year from the time the loan is made, with interest thereon or discounted at a rate not exceeding six per cent. per annum. The said debt or debts incurred by a loan or loans to the city under this order are to be paid from the said taxes of the present municipal year."

"In Common Council, January 1, 1906.

"Order adopted by yea and nay vote. Yeas 18, nays 0, absent 0, and sent up for concurrence.                                   J. Herman Carver, Clerk."

"In Board of Aldermen, January 1, 1906.

"Order adopted in concurrence by a yea and nay vote. Yeas 7, nays 0, absent 0.                                   George H. Stevens, City Clerk."

"Approved, January 1, 1906.                          W. F. Houston, Mayor."

"A true copy:

"[Seal.]    Attest:    George H. Stevens, City Clerk."

"City of Newburyport, April 13, 1906.

"I hereby certify that the total amount borrowed under the above authorization, including Note No. 796 of this date, is One hundred ten thousand dollars.
                                        "J. V. Felker, Treasurer."

"In Committee on Finance, January 9th, 1906.

"Ordered, that his honor the mayor be authorized to approve for the committee on finance, all notes of the city of Newburyport duly negotiated on any loan made for and in behalf of the city.

"Attest:    George H. Stevens, Clerk of the Committee."

A question is made with reference to the effect of the approval for the committee on finance by the mayor alone. We need not, however, rest on this approval, because the other vote of the committee of January 9th, which relates exclusively to the issue of the notes in suit, fully protects them. The vote of the city council authorized and directed the city treasurer to borrow. Therefore, as we have said, he was the actor. He, however, was to borrow with the approval of the committee. The committee provided by its second vote that the city treasurer be authorized to negotiate notes under the provisions of the order of January 1, 1906, from time to time as might be required. Thus, so far as the committee had jurisdiction, it, by one stroke, gave the city treasurer, coupled with the mayor, authority to issue the notes to the limit named. It thus approved the entirety once for all. The committee might or might not have linked the mayor with the city treasurer. It was under no obligation to do so, but it did. As this approval by the committee was a matter touching the authority of the treasurer, the holders of the notes are entitled to find that authority wherever they can; and the reference to the other vote of the 9th of January, appearing on the notes when issued, was, for the reasons we have stated, a harmless and needless matter. Thus, so far as the approval of the committee is concerned, the record is complete, and the case comes down to the only fair question raised by it, and that is the matter of the overissue. This question, again, comes down to the other question, whether the certificate of the city treasurer on each note, formally stating the amount of notes previously issued, together with the other matters appearing on the face of the papers, are sufficient under the circumstances to meet this defense.

After citing numerous decisions of the Supreme Judicial Court of Massachusetts, the defendant's brief makes the following statement, which seems to be the substance of the defense:

"It is clear from these cases that a Massachusetts municipality is not liable on notes executed by its treasurer unless the treasurer acts in pursuance of an authority especially conferred upon him by vote of the town, or, in case of a city, by the city council, and unless the conditions and limitations of his authority are strictly observed. His authority is not enlarged by his own statements concerning the matter, nor by any custom to act without authority."

At the outset we are met by a proposition of the defendant that this question of overissue is purely one of local law, and that, therefore, under the Massachusetts decisions, the notes were invalid. If the sole question here was one merely of authority on the part of the city treasurer, and if all the facts concerning the same were known to the purchasers of the notes when the title was acquired, it might be a local one in the ordinary sense of the expression; but the facts not being exhibited on the face of the notes, and not being known to their holders at the time the title to them was acquired, the question is not one as to which it is necessary to examine the local decisions. The statute of the United States on this topic is found in section 721 of the Revised Statutes (U. S. Comp. St. 1901, p. 581) to the effect that the laws of the several states shall be regarded as rules of decision in trials at common law in the courts of the United States "in cases where they apply." It has long been held by the Supreme Court that special local laws do not apply to all phases of commercial paper in the hands of innocent bona fide holders; and the reason for this is plain. Commercial paper is governed by the law merchant, and the law merchant is a part of the private international law; and, commercial paper being intended to circulate into the hands of citizens of different states and nonresidents, it is not always possible to apply peculiar local law with justice. In Watson v. Tarpley, 18 How. 517 (decided at the December term, 1855) 15 L. Ed. 509, the Supreme Court refused to apply even a local statute intended to fix rules for protest and notice with reference to nonacceptance or nonpayment of commercial paper. That tribunal has gone so far as to hold that a case like this at bar falls within the ordinary line of decisions as to commercial paper, and not within the line of decisions as to the legal authority of local officials. The last declaration is stated in Presidio County v. The Noel-Young Bond & Stock Company, 212 U. S. 58, 73, 29 Sup. Ct. 237, 53 L. Ed. ——, where the highest court in Texas had adjudged invalid the precise issue of bonds which the Supreme Court afterwards held to be valid. Therefore, we need not pursue further this proposition in defense.

The defendant admits that it is clearly established by many cases in the federal courts that, when the authority of a municipality to issue bonds or notes is made conditional on the existence of certain facts, and where the Legislature or the city council has, expressly or by implication, authorized certain officers to determine whether those facts exist, their recitals that the facts do exist are conclusive in favor of bona fide purchasers. In the earlier cases in the Supreme Court reliance

was evidently placed very largely on express authority of the kind just referred to. As, for example, it was said that, where certain officers were authorized to canvass votes at a certain election preliminary to issuing bonds, their canvass, and their certificate in due form of the result, were effectual. But, going on from one period to another, the Supreme Court has been more and more prone to recognize an implied authority in this direction. Yet the practice in this particular has not gone beyond what natural justice requires. It is within the power of municipal corporations, by establishing an independent registry or otherwise, to protect themselves almost absolutely against overissues by its own officers. Here there was no such independent registry, and no method by which the purchaser of the notes of the city could ascertain with certainty whether there was any overissue, either as to the extent of the loan which the statute authorizes in anticipation of taxes, or with respect to the gross amount of the notes which the statute permitted. The effect of such a registry, if duly established, is shown in Merchants' Bank v. Bergen County, 115 U. S. 384, 391, 392, 6 Sup. Ct. 88, 29 L. Ed. 430, where there were no recitals, but there was an independent public record of the county open to inspection.

In Daviess County v. Dickinson, 117 U. S. 657, 6 Sup. Ct. 897, 29 L. Ed. 1026, relied on by the defendant, there was only a certificate by a judge of the county court indorsed on the back of each bond, as to which the opinion said, at page 664 of 117 U. S., at page 901 of 6 Sup. Ct. (29 L. Ed. 1026), that neither the statute nor the vote of the people nor the order of the county court empowered him to make it, or even to determine whether the county had exceeded the power conferred upon it. The opinion added: "An officer's certificate of a fact which he has no authority to determine is of no legal effect." However, we have no occasion to refer in this connection to any decision except that of Presidio County v. Noel-Young Bond & Stock Company, 212 U. S. 58, 29 Sup. Ct. 237, 53 L. Ed. ——, which we have already cited as the last pronouncement on this topic. There the amounts sold were excessive. Although, under the statute, the county commissioners' court was to determine the amount of the loan, "the act provided that the bonds should be signed by the county judge, countersigned by the county clerk, and registered by the county treasurer, before being delivered." It contained no provision giving authenticity to the signatures of these officers, or providing that they should certify the facts in reference to the amount of the issue, or make any certificate whatever. Yet their signatures were held to be conclusive in favor of innocent purchasers of the bonds. We are unable to determine, in this essential matter of the form of an express or implied authority in favor of a recital, between that case and the case at bar, where the city treasurer was authorized to negotiate the notes in connection with the mayor, and where the notes themselves were signed, as we have shown, by both the city treasurer and the mayor, and were accompanied with a vote of the city council fixing a limit to the issue, and by a certificate of the treasurer that it had not been exceeded, the whole accompanying the note, and constituting, when negotiated, but a single paper or instrument. Therefore we are of the opinion that the judgment of the

circuit court in favor of the plaintiff for the amount of the four notes sued on was without error.

This leaves only the question of the city's count in set-off. Passing by a demurrer filed by the plaintiff, which we do not find it necessary to consider, we perceive again that the decision of the Circuit Court in instructing the jury to return a verdict for the plaintiff on this set-off was without error. It seems that the city treasurer issued a note, dated November 13, 1905, for $80,000, which was payable on April 13, 1906, the same day on which the notes in suit were given. The various votes accompanying this note, and the proceedings exhibited on the paper attached to it, were in all respects the same as with regard to those in suit, excepting only the dates. There was a like vote of the city council, and the signatures and certificate were all in the same form. The vote of the city council was passed on January 2, 1905, and the issue authorized was the same, $160,000. The note of November 13, 1905, was, as we have said, signed by the mayor, as well as by the city treasurer; and there was a like certificate by the city treasurer showing there was no overissue; and there were two votes of the committee on finance of January 12, 1905, in all respects except the date the same as the two votes of January 9, 1906. The entire note of November 13, 1905, was an illegal overissue by the treasurer. He used the check received for the notes in suit to take up, on the same day that they were negotiated, the note of November 13, 1905, at the bank where it was deposited for collection. The city maintains that this note was an unlawful note, and that the use of the check referred to was an application of it by the city treasurer for an unlawful purpose. Of course, however, there was here no obligation resting on Blake Bros. & Co., or the Citizens' Savings Bank, whichever it was, to follow the check which Blake Bros. & Co. gave the city treasurer, or otherwise to see to the application of the proceeds, as sometimes happens with reference to trust funds. It might have been otherwise if the check had been repaid directly to the plaintiff; but the bank into which it was paid, though in one sense the plaintiff's agent, was an independent institution. Therefore, the only question, as it seems to us, which can be raised by the city, arises from the fact that the note of $80,000 of April 13, 1906, belonged when paid to the plaintiff, the Citizens' Savings Bank; so that, if the note was not a valid note in its hands, it received funds of the city to which it was not entitled. This, of course, involves again the same questions which we have discussed. Some attempt is made by the defendant to differentiate the circumstances by reason of the fact that, when the note of November 13, 1905, was issued, the amount of taxes remaining uncollected was less than the amount of this note together with the previous notes which had been issued and remained unpaid. We are unable to see any essential distinction arising on this account. The defendant, however, further refers to a provision of the Ordinances of the City, as follows:

"Sec. 5. No money shall be drawn out of the city treasury except on the written order of the mayor addressed to the treasurer, and countersigned by the city clerk."

There is no statutory provision corresponding to this ordinance, and the ordinance is therefore a mere regulation by the city of its own af-

fairs. This is a common provision in the ordinances of cities; but, unless there is a statutory requirement of that nature, we never have understood that any innocent holder of negotiable paper of any municipality is required to assure himself that a warrant has issued in accordance with such a provision before accepting payment through the bank which he has employed for its collection.

The judgment of the Circuit Court is affirmed, with interest; and the Citizens' Savings Bank recovers its costs of appeal.