### GEORGE A. EYER & CO. v. MERCER COUNTY, KY.

(District Court, E. D. Kentucky.  May 26, 1923.)

1. **Municipal corporations ⬦⇒943(2)—When county estopped to deny validity of bonds by recitals therein stated.**

In order that recitals in county bonds shall estop county to deny
their validity, it is essential that they be broad enough and that officer
or officers making them have authority to do so; but such authority
is implied if no provision is made for ready ascertainment of the·
truth in regard to matter covered by the recital.

2. **Counties ⬦⇒121—Recital in note as to existence of conditions precedent held authorized.**

Under resolution of Kentucky fiscal court authorizing making of note
in anticipation of taxes and providing that presiding judge should exe-
cute such note, the presiding judge had authority, in note reciting
such resolution and executed in the name of the county, to insert recital
that every act, condition, and thing required to be done and performed
precedent to its issuance had been done and been performed in com-
pliance with Constitution and laws.

3. **Municipal corporations ⬦⇒943(1)—Estoppel by recitals in obligations not limited to bonds.**

The rule as to estoppel of county to deny validity of its obligations
by recitals therein as to facts on which validity depends is not limited,
in its application, to negotiable bonds to exclusion of promissory note.

4. **Counties ⬦⇒171—Discount taken by lender held not to affect bona fides.**

That one lending $50,000 to a county on note given by it in anticipa-
tion of taxes took illegal discount of $750, if true, *held* not to affect
bona fides of the transaction on his part.

5. **Counties ⬦⇒171—That lender took note without approval by county attorney held not to affect bona fides.**

Though one lending $50,000 to county on its note given in anticipation
of taxes had stated he would not make the loan unless county attorney
approved it, he had right to change his mind, and his bona fides was
not affected because he made loan without such approval, where he
had no notice that county attorney had not approved it. ·

---

⬦⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**6. Counties** ⬤⟹171—**Immaterial that recital in note was inserted at payee's request.**

Where one lending money to county on its note given in anticipation of taxes acted on recital in the note as to doing and performance of acts and conditions precedent to its issuance, it was immaterial that such recital was prepared by him and inserted at his request.

**7. Counties** ⬤⟹171—**Money loaned county on note recoverable when transaction invalid.**

Where plaintiff loaned money to Kentucky county on note purporting to have been given in anticipation of taxes and the money was disbursed on behalf of the county, it is recoverable from the county on the principle of unjust enrichment, even though transaction was invalid under Const. Ky. § 157, limiting indebtedness of counties without assent of voters.

**8. Counties** ⬤⟹171—**Petition held to authorize recovery under principle of unjust enrichment.**

Under petition alleging that plaintiff loaned and delivered to defendant county $50,000 for which note was executed and delivered, and that the money was received and accepted by defendant and paid to its treasurer and used for its purposes, defendant could recover on principle of unjust enrichment, though action was not in terms for money had and received.

Action by George A. Eyer & Co. against Mercer County, Ky. Judgment for plaintiff.

Dorsey & Dorsey, of Henderson, Ky., and Trabue, Doolan, Helm & Helm, of Louisville, Ky., for plaintiff.

John D. Carroll, of Frankfort, Ky., R. W. Keenon, of Lexington, Ky., and Robt. L. Black, of Harrodsburg, Ky., for defendant.

COCHRAN, District Judge. This cause is before me for final judgment. It is a suit on a note for $50,000 executed, on behalf of the defendant, by its county judge, to which the seal of the county was affixed and attested by its county clerk, August 17, 1921, due December 17, 1921, and bearing 6 per cent. interest, in consideration of that sum of money that day loaned by the plaintiff to the defendant. It was executed pursuant to a resolution of the fiscal court of the defendant that day passed, which recited that the note was given in "anticipation of the taxes for 1921 for county purposes," and provided that "the proceeds thereof be turned into the general fund of Mercer county," and that "the full faith and credit of the county of Mercer be pledged to the punctual payment of the principal and interest of said note at maturity," and that "J. W. Davenport, presiding judge of this court, execute said note on behalf of Mercer county." It recited that it was issued in pursuance of such resolution, and that—

"Each and every act, condition and thing required to be done, to have happened and to be performed precedent to and in the issuance of this note has been done, has happened and has been performed in full and strict compliance with the Constitution and laws of the state of Kentucky, and that this note is within every debt and other limit prescribed by law."

Attached to the note was a legal opinion by E. H. Gaither, a practicing attorney of Harrodsburg, the county seat of Mercer county, who subscribed himself as "Special Attorney for Mercer County Fis-

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

cal Court," in which he stated that, in his opinion, the note was "a valid and binding obligation of said fiscal court of Mercer county and Mercer county." On the back of the note was a financial statement of Mercer county signed by its treasurer, in which it was stated that there was no other outstanding indebtedness of the county than a bonded indebtedness of $60,000, and that the gross receipts of the county for the year were $125,085. The proceeds of the note was paid to the county treasurer and thereafter disbursed by him on behalf of the county.

The sole defense urged against the note is that, at the time of its execution, the fiscal court of defendant had no power to borrow the money for which it was given or to execute it. The ground on which it is claimed that there was an absence of such power is that there had been no previous assent to the creation of such indebtedness by the voters of the county as required by section 157 of the Constitution of Kentucky. This assent, it is claimed, was required because at that time the indebtedness and necessary current expenses of the county payable in the year 1921 exceeded the income and revenue for that year. The plaintiff contests this latter claim and asserts that, at the time the note was executed, the income and revenue for that year exceeded the indebtedness and current expenses so payable to a greater extent than $50,000. He contends further that, whether this is so or not, he is entitled to recover, and that on three grounds. One is that, by reason of the recitals in the note, the defendant is estopped to deny that its fiscal court had power to borrow the money and to authorize the execution of the note. Another is that the defendant received the proceeds of the note upon the idea that its fiscal court has such power, and they have been disbursed on its account. If it repudiates the action of its representatives, it should repay to plaintiff the money which it received through such action and which it would not otherwise have received. It is inequitable that it should not do so. The third ground is that the money was borrowed in anticipation of income and revenues for the year 1921, and at that time more than the amount thereof was yet to be collected and subject to anticipation. This being so, the defendant had the power to borrow the money without the previous assent of the voters. I will take up each one of these grounds in the order stated and dispose of them.

[1] As to the first ground: I have heretofore, in the case of Dietrich v. Bath County, 292 Fed. 279, undertaken to set forth the law on the subject of the effect of recitals in municipal obligations. That statement has been accepted as sound by both sides. According thereto, in order that such recitals shall work an estoppel, it is essential that they be broad enough and that the officer or officers making them should have authority to make them. On the subject of such authority I stated that it is to be implied, if no provision is made for the ready ascertainment of the truth in regard to the matter covered by the recital. I do not understand this latter proposition to be questioned by defendant's counsel any more than the other two.

The positions which they take in this connection are these:

[2] 1. The county judge of the defendant who executed the note in

suit on its behalf was not authorized to make the recital relied on to estop it, because there was no express provision in the resolution of the fiscal court to that effect. They cite the decision of the Supreme Court of the United States in the case of Daviess County v. Dickinson, 117 U. S. 657, 6 Sup. Ct. 897, 29 L. Ed. 1026, where the county court of Daviess county, in this state, authorized the execution of $250,000 in bonds of the county in payment of a subscription to a railroad company and provided that the bonds should be signed by the judge and the clerk of the county court and have the seal of the county impressed on each. The subscription and issuance of $250,000 in bonds in payment thereof was valid. The presiding judge and the clerk of the county court, claiming to act under that order, issued bonds to the amount of $320,450. The question was whether the $72,450 of bonds last issued in excess of the valid amount were binding upon the county. It was held that they were not. The presiding judge of the county court made a certificate on the back of each of these bonds that it was issued as authorized by the statute and by an order of the county court in pursuance thereof. It was held that the county was not estopped by this certificate to dispute the validity of the bonds. The Supreme Court, through Mr. Justice Gray, disposed of this matter in these words:

"The certificate of the judge of the county court upon the back of each bond, that it was issued as authorized by the statute and by an order of the county court in pursuance thereof, cannot estop the county to deny that the particular bond is void because the county court, at the time of issuing it, had exhausted the power conferred by the act of the Legislature and the vote of the people. The certificate is not a recital in the bond. It is not the act of the county court, it is not under its seal. nor signed by its clerk; but is simply the certificate of the person holding the office of judge of that court. Neither the statute, nor the vote of the people, nor the order of the county court, empowered him to make such a certificate, or to determine the question whether the county court had exceeded the power conferred upon it. An officer's certificate of a fact which he has no authority to determine is of no legal effect."

It will be noted that here the county judge had no power to execute any bond. Power so to do was conferred by the county court on the judge and clerk jointly, and its order further provided that the seal of the county should be impressed on each. The certificate relied on was that of the county judge alone. It was on the back of the bonds. It was not a recital in the bond. It did not purport to be the act of the county court and was not under the seal of the county. In the case here the county judge was alone authorized to execute the note. The recital relied on is in the body thereof. It is not the individual act of the county judge, but of the Mercer county fiscal court by him. It is under the seal of the county affixed and attested by the clerk of the county court. This decision, therefore, has no application here. Authority in support of the position that the defendant is bound by the recital is to be found in the decisions of the appellate court of this circuit in the cases of Rondot v. Rogers, 99 Fed. 202, 39 C. C. A. 462; Rees v. Olmstead, 135 Fed. 296, 68 C. C. A. 50. In the latter case, that court, through Judge Richards, said:

"While it is true that a recital made by an unauthorized board or officer is not binding, the rule has no application here. It is conceded that the County Commissioners appointed the road commissioners, and that the latter issued the bonds, attested by the county auditor, which were sold. This is an admission that the county commissioners appointed the road commissioners for the purpose of issuing the bonds. Having done this, it necessarily follows that they authorized the road commissioners to make the usual recitals required to render the bonds marketable, such as they would have made themselves, namely, that all the things necessary to be done in order to authorize the issue had been done. A purchaser might fairly presume that the road commissioners had authority to speak on this point."

In the case here the resolution in pursuance of which the note was executed recited that the transaction was "in anticipation of 1921 taxes for county purposes." This meant in legal anticipation of such taxes. In the Bath County Case the bonds in suit and upheld recited that they were issued for the purpose of funding "Bath county's floating indebtedness." The resolution was referred to in the note. So, what we have here is not merely a recital by the county judge, but one by the fiscal court. In view of this recital in the resolution, clearly, at least, the county judge was authorized to make the recital in the note.

[3] 2. The law as to the effect of recitals in the written obligations of municipalities has relation solely to negotiable bonds and not to such an obligation as that involved here. No authority is cited in support of this position. What is relied on is the fact that the cases in which the law has been applied have very largely been cases involving negotiable bonds. Its application in such cases, however, has not been limited to subsequent purchasers of such bonds from the original holders. It has been held applicable to the original holders thereof. In the case of Douglass County v. Bolles, 94 U. S. 104, 24 L. Ed. 46, the Supreme Court, through Mr. Justice Strong, said this:

"And still more, the contractor for building the railroad received the bonds from the county in payment for his work, either in whole or in part, after his work had been completed. There is no pretense that he had notice of anything that should have made him doubt their validity. Why was he not a bona fide purchaser for value? The law is undoubted, that every person succeeding him in the ownership of the bonds is entitled to stand upon his rights."

Such being the case, what possible difference can the character of the obligation which one who loans money to a municipality receives in return therefor make as to its validity? Is not one kind of obligation just as valid as another? The ground of the estoppel is that the creditor has parted with his money or other consideration on the faith of the truth of an authorized representation as to a material fact, and, such being the case, it would be inequitable thereafter to permit the municipality to dispute its truth. And this applies whatever may be the nature of the obligation executed on behalf of the municipality.

In the case of Citizens' Savings Bank v. City of Newburyport, 169 Fed. 766, 95 C. C. A. 232, the law as to estoppel because of a recital was applied to a note, and in the case of W. L. Slayton Co. v. Panola County, Tex. (D. C.) 283 Fed. 330, to a county warrant.

[4-6] 3. The plaintiff is not a bona fide holder of the note. Several reasons are urged in support of this position. The note with its

estopping recital was prepared by plaintiff. In the preliminary negotiations plaintiff stated that it would not make the loan unless the county attorney approved it, which he never did. The financial statement on the back of the note contains no statement as to the amount of the floating debt or what year the gross receipts were for. The note was made to bear 6 per cent. interest, which was illegal, and plaintiff took out $750 as discount which he had no right to do. I cannot see that any one or more or all of these considerations affects the bona fides of the transaction on plaintiff's part. The petition alleges, and the answer admits, that the defendant received the entire $50,000. I have not felt called upon to examine the record to see whether it discloses whether any such discount was taken out of the proceeds. I understand that a municipality has power to pay 6 per cent. interest for monies borrowed in anticipation of revenues. As I read the statement on the back of the note, the gross receipts given are for the year 1921, and it is stated that there was no outstanding floating indebtedness. The plaintiff had the right to change its mind as to not making the loan unless the county attorney approved and acted on the recital. It had no notice that the county attorney has not approved the loan. It was immaterial that the recital was made at plaintiffs' request and was prepared by him. The only question is whether or not the loan was made on the faith of the recital. As to this there can be no question. The plaintiff had not the slightest hint that there was any question as to the power of defendant to borrow the money. It is hardly conceivable that he would have made the loan if he had. $750 discount and 6 per cent. interest would not have tempted him to jeopardize $50,000.

I am therefore constrained to hold that the first ground upon which it is claimed that plaintiff is entitled to recover, even though it is conceded that the defendant fiscal court had no right to borrow any money or to execute the note in suit, is well taken. This case brings out with much force the position that section 157 of the Kentucky Constitution contemplates that the proper officers of a municipality have the power to make binding statements as to its financial status in order to obtain a loan of money in anticipation of revenues. The power of a municipality to anticipate its revenues by borrowing is a highly valuable power. If the year referred to in section 157 is the calendar year, as contended for by defendant, the bulk of its revenues will not come in until near the end of the year. Until then it is likely to be greatly embarassed in its operation if it cannot obtain means by borrowing. But if a lender is bound at his peril to ascertain the true financial status of the municipality, there will be very little money loaned to it. Here it would have taken the proverbial Philadelphia lawyer to determine whether the defendant had the power to borrow the money on the basis that it is the calendar year called for by the Constitution, and I do not think that even he can determine whether it is the calendar year or fiscal year that is called for. Any other position than that taken here would in many instances paralyze the municipalities of the state.

[7] I think, also, that the other ground of recovery relied on by plaintiff is well taken, and that authority therefor is to be found in the decisions of the Court of Appeals of Kentucky in the cases of City of Bardwell v. Southern Engine Works, 130 Ky. 222, 113 S. W. 97, 20 L. R. A. (N. S.) 110; Floyd County v. Owego Bridge Co., 143 Ky. 693, 137 S. W. 237; City of Henderson v. Redman, 185 Ky. 146, 214 S. W. 809, 7 L. R. A. 346. In the first two it was held that if a municipality obtains property under a void contract of purchase, though the contract of purchase cannot be enforced, the property can be recovered. In the Henderson Case it was held that one who had loaned money upon void bonds of the city could recover the money. In the Floyd County Case the court said:

"The obligation to do justice rests upon all persons, natural and artificial, and if a county obtains money or property of another without authority, the law, independent of any statute, will compel restitution or compensation. Under this rule, Floyd county will not be permitted to retain the bridges. * * * Appellee will be permitted to remove the bridges and all the material which it furnished in their construction."

In the Henderson Case it is said:

"It will be noticed that the principle last referred to permits the plaintiff to recover the property which his services furnished or created, if obtainable, and it permits him to recover from the municipality 'money' which it had obtained from him without authority. But we are not without authority from this court holding that money illegally paid, or paid without consideration, to a municipality may be recovered from it. In the case of Trustees of the Town of Stanford v. Hite, 2 Ky. Law Rep. 386, and reported in full in 11 Ky. Opinions, 145, it was held that one who paid to the city money for a license which had been issued under a void ordinance could be recovered by the payor in a suit against the city, upon the ground that it had been paid by a mistake and without consideration. In the course of the opinion this court through Judge Pryor said:

" 'The corporation has no right to this appellee's money. He was under neither a legal nor moral obligation to pay it; and having received no consideration in any manner by reason of its payment, the corporation was properly required to refund it.'

"This is in accord with the fundamental principles of justice, and does not come within the rule requiring the court to protect the taxpayer by a strict construction of the powers and authority of the municipality and its agents, since he never had any interest in the fund to be protected, having in no way contributed to it, and we unhesitatingly adopt it as the correct doctrine in order to carry out the principles of right, justice and honesty between individuals, whether artificial or natural. But we go no further than to apply the principle herein announced to the facts of this case."

The only difference between those cases and this is in the basis of invalidity of the contracts involved. This, however, is no reason for a difference in decision. It will be noticed that in the City of Bardwell Case the basis of invalidity was that the contract was prohibited by section 158 of the Kentucky Constitution. Section 157 invalidates voluntary debts of a municipality. It has reference solely to such indebtedness. It has nothing to do with involuntary obligations created on the principle of unjust enrichment. In other words, it invalidates the note in suit if it comes within its prohibition. But the obligation of the defendant to return the money obtained from plaintiff upon the mistaken idea that it had the power to borrow it, on the principle of

common honesty, is not within such prohibition. Municipalities as well as other artificial persons and real persons are subject to such principle.

[8] But it is urged that this is a suit on the note and not an action for money had and received. There is no virtue in the use of such words. It is alleged in the petition that the plaintiff loaned and delivered the defendant the sum of $50,000, at the time of the execution and delivery of the note, and that it was received and accepted by the defendant and actually paid to its treasurer and was employed by it and used for its purposes. If so be, then the defendant has made good its defense to the note plaintiff is entitled to recover on the basis of these allegations.

The third ground does not presuppose the invalidity of the note in suit. It relies on the validity. At the time it was executed, more of the income and revenues for the year 1921 than its amount had not been collected, and such amount had not been anticipated by previous borrowings. Though defendant may have been limited in the use which it could make of the money, in that it had to be applied to indebtedness existing at the beginning of the year and current expenses, it had the right to borrow it for such purposes. The fact that it did not so apply the money so obtained did not invalidate the borrowing and the note. It was a mere misapplication of the defendant's funds for which plaintiff was in no way responsible. According to this view of the matter, one loaning money to a municipality in anticipation of its current income and revenue is bound to see that the loan does not exceed the income and revenue yet to be collected less previous anticipations and no more. Indebtedness existing at the beginning of the year and current expenses are in no sense of the word anticipation of the current income and revenue, though they limit the use to which anticipations may be put. I do not find it necessary to commit myself as to this position. All I will say is that I am somewhat impressed by it.

The conclusion to which I feel driven is that the plaintiff is entitled to judgment.