### DIETRICH v. BATH COUNTY, KY.

(Circuit Court, E. D. Kentucky. November 8, 1909.)

No. 106.

1. Pleading ⊱174—Traverse of answer and matter in confession and avoidance should have been stated separately.

Where reply contained traverse of certain allegations of the answer and matter in confession and avoidance, they should have been stated in separately numbered paragraphs.

2. Pleading ⊱196, 362(2)—Motion to separate allegations and demur to those objectionable, instead of motion to strike out, held proper remedy.

Where reply contained traverse of certain allegations of the answer and allegations in confession and avoidance, defendant, in testing suffi-

ciency of the latter allegations, should have moved to have them stated in separately numbered paragraphs and then demurred thereto, instead of moving to strike them out.

3. **Municipal corporations** �köm943(2)—**When estopped to deny validity of bonds by recital therein stated.**

When provision is not made for ready ascertainment by purchaser of county bonds of fact essential to their validity, authority on part of officers having authority to issue them to determine and make statement of such fact by way of recital in the bonds will be implied; and, if the recital is sufficiently broad to cover such fact, the municipality will be estopped to dispute its truth as against bona fide purchaser.

4. **Counties** ⊫köm183(2)—**Fiscal court held authorized to make representations as to validity of indebtedness by recital in funding bonds.**

While Ky. St. § 1857, authorizing fiscal court to fund debts for public buildings, etc., confers such power only with reference to debts legally incurred, as no provision is made for statements of indebtedness from which purchasers may readily ascertain amount and legality thereof, the fiscal court has power to make representations as to validity of the indebtedness to be funded by recital in the funding bonds.

5. **Municipal corporations** ⊫köm943(2)—**Recital in bonds held to estop county to deny validity.**

Recital in bonds issued by Kentucky county that they were issued to fund its floating indebtedness contracted in repair of its courthouse and in construction of turnpikes, roads, and bridges was representation that they were issued to fund valid floating indebtedness and estopped the county to claim that the indebtedness funded was invalid.

At Law. Action by Albert Dietrich against Bath County, Ky. On motion to reconsider order overruling motion to strike out certain portions of the reply. Motion overruled.

Peck, Shaffer & Peck, of Cincinnati, Ohio, for plaintiff.

C. W. Goodpaster, of Owingsville, Ky., and Robert H. Winn, of Mt. Sterling, Ky., for defendant.

COCHRAN, District Judge. This cause is before me on motion to reconsider order overruling defendant's motion to strike from plaintiff's reply certain portions thereof. Inadvertently I acted on the motion to strike without waiting for briefs of counsel thereon. Since then the question has been briefed, and I have considered it afresh in the light of all that is before me.

The defense set up by the answer to which that portion of the reply is a response is in substance that the bonds of which those from which the coupons in suit have been detached are a part, amounting in all to the sum of $23,500, dated July 1, 1900, and issued under section 1857 of Kentucky Statutes, providing for the funding of a county's indebtedness contracted for public buildings, bridges, and turnpikes are invalid to the extent of $21,045.49, and therefore a like proportion of the coupons in suit are invalid. So much of said bonds are invalid because that much of the pre-existing indebtedness in the funding of which said bonds were issued were invalid, and it was invalid because it was incurred during the fiscal year ending July 1, 1892, for the construction of turnpikes when the surplus revenues for the year applicable to that purpose did not exceed the sum of $8,022.43 and there

⊫kömFor other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

was no previous two-thirds vote in favor of the creation of the indebtedness as required by section 157 of the Constitution. The allegation of the answer is that the total revenues for the year 1892 amounted to the sum of $20,022.45 and during that year previous to the creation of said indebtedness an indebtedness of $12,000 had been incurred for current annual expenses. This left the surplus above stated applicable to other legitimate purposes.

That portion of the reply sought to be stricken out is a reliance on the recital in the bonds and coupons that they were for the purpose of funding the defendant's floating indebtedness contracted in the repairs of its courthouse and in the construction of turnpikes, roads, and bridges in the county as an estoppel against the defendant's right to plead said defense.

[1, 2] The other portion of the reply not covered by the motion to strike is a traverse of certain allegations of the answer. That portion thereof and that involved here, which is in confession and avoidance, should have been stated in separately numbered paragraphs, and defendant, to have raised the question under consideration, should have moved to have it done and upon its being done have demurred to that portion of the answer which would have been the second paragraph thereof. This is not a case for a motion to strike, but for demurrer. Possibly upon demurrer, if so much of the reply is good, it should be carried back to the answer and it adjudged bad because the bonds and coupons are copied in full in the petition and it appears therefrom that they contain the recital relied on and this is not denied in the answer.

But as the value of the recital has been fully briefed, I will waive the manner in which it has been raised and determine the question on its merits.

Counsel for defendant cites the following decisions of the Supreme Court as sustaining his contention that such recital is of no value to plaintiff as an estoppel, to wit: Buchanan v. Litchfield, 102 U. S. 278, 26 L. Ed. 138; Dixon County v. Field, 111 U. S. 83, 4 Sup. Ct. 315, 28 L. Ed. 360; Lake County v. Graham, 130 U. S. 674, 9 Sup. Ct. 654, 32 L. Ed. 1065; Doon Township v. Cummins, 142 U. S. 366, 12 Sup. Ct. 220, 35 L. Ed. 1044; Sutliff v. Lake County, 147 U. S. 230, 13 Sup. Ct. 318, 37 L. Ed. 145.

I will begin the discussion by a consideration of these cases with a view of determining just what they decide that can possibly have relevance to this case and what, if any, bearing, what they so decide has upon this case. Take the case of Buchanan v. Litchfield. It arose in the state of Illinois and was an action on coupons detached from bonds issued by the city of Litchfield, to raise money for the construction of a system of waterworks for the benefit of the people of the city. By the Constitution of Illinois adopted in 1870, each municipality therein was prohibited from becoming indebted in any manner and for any purpose to an amount, including existing debts, in the aggregate exceeding 5 per cent. on the value of taxable property therein, to be ascertained by the last assessment for state and county taxes previous to incurring such indebtedness. By an act approved April 15, 1873 (Laws 1873, p. 190) the Legislature authorized the cities of the state

to construct and maintain a system of waterworks and to borrow money and issue bonds therefor. By an ordinance approved December 4, 1873, the city of Litchfield authorized the borrowing of $50,000 and the issuance of the bonds from which the coupons in suit had been detached, and they were issued on January 1, 1874. The taxable property of the city assessed for the year 1873 was worth $1,400,000, and the indebtedness of the city on January 1, 1874, otherwise and previously incurred was $70,000, i. e. 5 per cent. of said valuation. The city, therefore, at that time had no power under the Constitution of the state to borrow any more money or to issue the bonds in question, and they were invalid unless saved by the recital which they contained. And the question decided in that case was as to whether they were so saved. The recital was in these words:

"This bond is issued under authority of an act of the General Assembly of the State of Illinois entitled, 'An act authorizing cities, incorporated towns, and villages to construct and maintain waterworks,' approved April 15, 1873, and in pursuance of an ordinance of the said city of Litchfield numbered 184, and entitled, 'An ordinance to provide for the issuing of bonds for the construction of the Litchfield Waterworks,' approved Dec. 4, 1873."

It was held that the recital did not save the bonds and coupons, and this was on the ground of its meagerness. It did not go far enough. It was simply to the effect that they were issued under authority of said act, and in pursuance of said ordinance. There was not a word about the Constitution or any general language that might be construed as a statement that the existing indebtedness was of such size that an additional indebtedness of $50,000 might be created within the constitutional limitation. And it was practically conceded that such a statement would have saved the bonds and coupons.

Mr. Justice Harlan said that a purchaser of the bonds "was certainly bound to take notice not only of the constitutional limitation upon municipal indebtedness, but of such facts as the authorized official assessments disclosed concerning the valuation of taxable property within the city for the year 1873," and that no recital in the bonds could have relieved him of the necessity of taking notice thereof. This was because those facts were readily ascertainable, and hence there was no room to hold that it was the intention of the Constitution makers or of the Legislature that any one else might determine those facts for him and he could accept their determination as correct. But as to the amount of the existing indebtedness, the other of the two facts necessary to be known in order to determine whether a particular indebtedness could be incurred, it was intended that the purchaser was not bound to take notice thereof, but might accept a statement in the bonds on the subject as being correct, and this because that fact was not readily ascertainable, and hence it must have been intended that the determination thereof was left to the officials authorized to issue the bonds and a statement by them in regard thereto would be binding.

Mr. Justice Harlan said:

"But in what way was the purchaser to ascertain the extent of the city's indebtedness existing at the time the bonds in question were issued? The extent of that indebtedness was a fact peculiarly within the knowledge of the constituted authorities of the city. It was necessarily left, both by the Con-

stitution and the Statute of 1873 to their examination and determination, under the constitutional injunction, however, that no municipal corporation should exceed the prescribed amount of indebtedness. It was, nevertheless, a fact which, so far as we are advised by the record, could not at all times and absolutely, or with reasonable certainty, be ascertained from any official documents to which the public had access. A like difficulty, perhaps, would arise in the case of any municipal corporation, possessing the general power of raising money, by taxation and otherwise, to carry on local government. Its liabilities might frequently vary in their aggregate amount, and at particular periods might be of different kinds. Some fixed and absolute, while others would be contingent upon events thereafter to happen. These considerations were, doubtless present in the minds as well of those who framed the Constitution as of those who passed the Statute of 1873."

The learned justice then proceeds as follows:

"As, therefore, neither the Constitution nor the statute prescribed any rule or test by which persons contracting with municipal corporations should ascertain the extent of their 'existing indebtedness,' it would seem that if the bonds in question had contained recitals which upon any fair construction, amounted to a representation upon the part of the constituted authorities of the city that the requirements of the Constitution were met, that is, that the city's indebtedness, increased by the amount of the bonds in question, was within the constitutional limit—then the city, under the decisions of this court, might have been estopped from disputing the truth of such representations as against a bona fide holder of its bonds."

This position he backs up by pertinent quotations from the opinions in Coloma v. Eaves, 92 U. S. 484, 23 L. Ed. 579; Orleans v. Platt, 99 U. S. 676, 25 L. Ed. 404; Knox County v. Aspinwall, 21 How. 539, 16 L. Ed. 208; Kenicott v. Supervisors, 16 Wall. 452, 21 L. Ed. 319; Moultrie County v. Bank, 92 U. S. 631, 23 L. Ed. 631; Marcy v. Oswege, 92 U. S. 637, 23 L. Ed. 748.

He then continues as follows:

"Returning to the case in hand, it will be observed that the bonds issued by the city of Litchfield contain no recital whatever of the circumstances which, under the Constitution of the state, must have existed before the city could legally incur the indebtedness for which the bonds were issued. * * * A recital that the bonds were issued under the statute, and in pursuance of the city ordinance, did not necessarily import a compliance with the Constitution."

And finally, in line with what he had already said, he said:

"Had the bonds made the additional recital that they were issued in accordance with the Constitution, or had the ordinance stated, in any form, that this proposed indebtedness was within the constitutional limit, or had the statute restricted the exercise of the authority therein conferred to those municipal corporations whose indebtedness did not, at the time, exceed the constitutional limit, there would have been ground for holding that the city could not, as against the plaintiff, dispute the fair inference to be drawn, from such recital or statement, as to the extent of its existing indebtedness."

Is it not then perfectly plain that the ground upon which recovery was denied in this case was because the recital did not go far enough and that it was not denied upon any other grounds? The case then instead of being an authority against a recovery where the recital does go far enough, on the contrary is an authority supporting a recovery if there is no other circumstance in the case affecting the right. Then take the case of Dixon County v. Field. This case arose in the state

of Nebraska. It was an action on coupons detached from bonds issued January 1, 1876, as a donation to a certain railroad company in aid of its construction. The amount of the bonds so issued was $87,-000. By the Constitution and statutes of the state in existence at the time any county in the state after a certain vote was had in favor thereof was authorized to issue its bonds in aid of any railroad to an amount not to exceed ten per cent. of the assessed valuation of all taxable property in the county. The last previous valuation of the taxable property of Dixon county made in the spring of 1875 was $587,-331. The donation of $87,000 in bonds was more than ten per cent. thereof and hence it and said bonds were invalid, unless they were saved by the recital in the bonds. The recital therein was in these words:

. "This bond is one of a series of $87,000 issued under and in pursuance of an order of the county commissioners of the county of Dixon, of the state of Nebraska, and authorized by an election held in the said county on the 27th day of December, A. D. 1875, and under and by virtue of chapter 35 of the General Statutes of Nebraska, and amendments thereto, and the Constitution of the said state, article XII, adopted October, A. D. 1875."

It was held that the recital did not save the bonds. This was not, as in Buchanan v. Litchfield, on account of any deficiency therein, but because the officials who issued the bonds had no authority to make it, and hence the purchasers of the bonds had no right to accept it as true, but were bound to take notice that the bonds were invalid. This was because the facts upon which the validity of the bonds depended were readily ascertainable. In the face of the bonds it was stated that the amount of the issue was $87,000, and an inspection of the last previous assessment and valuation of the taxable property in Dixon county made in the spring of 1875 would have shown what that assessment and valuation was and led at once to the discovery that the donation was excessive and the bonds invalid.

That there may be an estoppel to dispute the truth of a recital as to compliance with conditions essential to the validity of bonds and the ground upon which such estoppel exists is thus set forth by Mr. Justice Matthews:

"And the estoppel does not arise, except upon matters of fact which the corporate officers had authority by law to determine and to certify. It is not necessary, it is true, that the recital should enumerate each particular fact essential to the existence of the obligation. A general statement that the bonds have been issued in conformity with the law will suffice, so as to embrace every fact which the officers making the statement are authorized to determine and certify. A determination and statement as to the whole series, where more than one is involved, is a determination and certificate as to each essential particular. But it still remains, that there must be authority vested in the officers, by law, as to each necessary fact, whether enumerated or not enumerated, to ascertain and determine its existence, and to guarantee to those dealing with them the truth and conclusiveness of their admissions. In such a case, the meaning of the law granting power to issue bonds is, that they may be issued, not upon the existence of certain facts, to be ascertained and determined whenever disputed, but upon the ascertainment and determination of their existence, by the officers or body designated by law to issue the bonds upon such a contingency."

And that a recital in a bond is of no value unless authority to make it exists is thus stated by Mr. Justice Matthews:

"If the officers authorized to issue bonds, upon a condition, are not the appointed tribunal to decide the fact, which constitutes the condition, their recital will not be accepted as a substitute for proof. In other words, where the validity of the bonds depends upon an estoppel, claimed to arise upon the recital of the instrument, the question being as to the existence of power to issue them, it is necessary to establish that the officers executing the bonds had lawful authority to make the recitals and to make them conclusive. The very ground of the estoppel is that the recitals are the official statements of those to whom the law refers the public for authentic and final information on the subject."

The reasoning upon which the holding that the recital here was unauthorized is as follows:

"In the present case there was no power at all conferred to issue bonds in excess of an amount equal to 10 per cent. upon the assessed valuation of the taxable property in the county. In determining the limit of power, there were necessarily two factors; the amount of the bonds to be issued, and the amount of the assessed value of the property for purposes of taxation. The amount of the bonds issued was known. It is stated in the recital itself. It was $87,000. The holder of each bond was apprised of that fact. The amount of the assessed value of the taxable property in the county is not stated; but, ex vi termini it was ascertainable in one way only, and that was by reference to the assessment itself, a public record equally accessible to all intending purchasers of bonds, as well as to the county officers. This being known, the ratio between the two amounts was fixed by an arithmetical calculation. No recital involving the amount of the assessed taxable valuation of the property to be taxed for the payment of the bonds can take the place of the assessment itself for it is the amount, as fixed by reference to that record, that is made by the Constitution the standard for measuring the limit of the municipal powers. Nothing in the way of inquiry, ascertainment or determination as to that fact, is submitted to the county officers."

These two cases, therefore, present us with two classes of cases where the recital does not work an estoppel and hence is of no value. One is where the recital is not broad enough. The other is where the recital is unauthorized.

The next case—that of Lake County v. Graham, may be said to belong to both classes. It arose in the state of Colorado. It was an action on coupons detached from bonds part of an issue of $500,000 by Lake county made January 2, 1882, in exchange for county warrants for that amount under an act of the Legislature entitled "An act to enable the several counties of the state to fund their floating indebtedness." The Constitution limited the aggregate indebtedness which any county might incur to a certain percentage of assessed valuation of the taxable property therein. Said act contained no limitation as to the character or the amount of the outstanding warrants in exchange for which bonds might be issued. It authorized the issuance of bonds in exchange for any outstanding warrants. At the time the $500,000 of warrants and the indebtedness evidenced thereby were created, the constitutional limit of indebtedness had been exceeded and the warrants were invalid. The bonds contained a recital to the effect that the issue was "under and by virtue of and in full compliance with" the statute, and "that all the provisions and requirements of said act have been fully complied with by the proper officers in the issuing of bonds." No reference was made therein to the Constitution, nor any statement made that the constitutional requirements had been observed. It was held

that the recital did not save the bonds and coupons thereto attached, and this on the ground that it was not broad enough. Mr. Justice Lamar said:

"There is, therefore, no estoppel as to the constitutional question, because there is no recital in regard to it."

He suggested that it might be said:

"That inasmuch as the bonds recite that all the requirements of the statute had been fully complied with by the proper officers, and inasmuch as one of these requirements was that the officers should determine the amount of the county debt, the inference is fair and reasonable that the statute meant only that they should count what was a just and actual debt, not claims that were void, and therefore no debt; and that the recital made was in effect a statement that the whole matter had been examined by the board, and that they had issued bonds for only such warrants as were found to be issued in conformity to the law, the whole law—fundamental as well as statute."

He waived "the question as to whether such a conclusion persuasive as it might be in other aspects of a cause, is [was] not too remote and indirect for the basis of an estoppel, the avowed object of which is to exclude from consideration the truth," and proceeded to dispose of the case on the assumption that such conclusion was sound. It is here that the case belongs to the second of the two classes above referred to. It was held that this made no difference because the assessed valuation of the taxable property was a matter of record and readily ascertainable and the bonds showed on their face that the issue amounted to $500,000, which was therefrom greater than the percentage of said valuation authorized by the constitution.

Mr. Justice Lamar said:

"It must be remembered that these bonds show on their face an issue of $500,000. * * * Now, while it is true that the bonds show on their face an issue of $500,000, yet it is true that neither the Constitution nor the statute nor the bond shows the amount of the valuation of the county; and it therefore might be said that, for this reason, and notwithstanding the purchaser's knowledge of the limit, and his knowledge that $500,000 of debt was incurred, yet he might not have known that the limit had been exceeded, being ignorant of the other item in the calculation, that of the amount of the assessed values, and that the recital of conformity, misleading him, would operate as an estoppel. This question is settled in the case of Dixon County v. Field."

He then quotes from that case language heretofore quoted, which is to the effect that in such a case it is not intended that the existence of the facts essential to the right to issue the bonds shall be determined by the officials issuing them, and the purchaser of the bonds has no right, therefore, to rely on any statement they may have made in regard thereto.

This brings us to the case of Doon Township v. Cummins, which belongs to the second class. It arose in the state of Iowa. It was an action on coupons detached from bonds, part of an issuance to the amount of $25,000, by Doon township under the statutes of Iowa of 1880, chapter 132. By the Constitution that township was prohibited from being indebted in the aggregate exceeding 5 per cent. on the value of the taxable property therein. The assessment thereof last before the issuance of the bonds was $131,038. Five per cent. thereof, or

$6,551.90, was the limit beyond which the township was prohibited by the Constitution to contract debts. Hence it had no power to issue the bonds. They contained this recital, to wit:

"This bond is executed and issued * * * in pursuance of and in accordance with chapter 132, Laws of the Eighteenth Assembly of Iowa, is in accordance with the laws and Constitution of the state of Iowa, and in conformity," etc.

It was held that the recital, broad as it was, did not save the bonds.

And finally comes the case of Sutliff v. Lake County. It also belongs to the second class' above referred to, though it would seem that it might have been disposed of on the ground that it came within the first, just as the other Colorado case heretofore considered was. It was an action upon coupons detached from six of an issue of ten bonds for $500 each, or $5,000, in all, under a certain act of the Legislature of that state for the purpose of raising money to construct roads and bridges. At the time the constitutional limit heretofore referred to had been exceeded and there was no power to issue them. The recital relied on did not cover the constitutional requirement, but related only to the act under which the bonds were issued. It was assumed that it was broad enough to cover the requirement, just as in the Colorado case heretofore considered it was suggested that a construction might be placed on the recital there involved making it that broad, and the effect of this was then considered. It was held that the recital so treated did not save the bonds. This case differs, however, from the other Colorado case in an important particular.

Here, the issuance involved did not itself exceed the constitutional limit; whereas, there it did. The invalidity depended entirely on the amount of the existing indebtedness. That may have been so small as to permit of an additional indebtedness to the extent of the issuance involved. In this particular, therefore, the case resembles the Illinois case of Buchanan v. Litchfield. And as it was disposed of on the basis that there was no deficiency in the terms of the recital, it may be queried why it did not save the bonds just as Mr. Justice Harlan intimated in the Illinois case the recital there would have saved the bonds there involved had it been broad enough. It was simply because the statute of Colorado provided for a record showing of the indebtedness of a county by which the amount thereof at any given time could be as readily ascertained as the assessed valuation of the taxable property of the county, which was not the case with the Illinois statute. It made it the duty of the county commissioners to publish and to cause to be entered on their records, open to the inspection of the public at all times, semiannual statements exhibiting in detail the debts of the county and the expenditures and receipts thereof for the preceding six months with the balance, so as to show the amount of the deficit or the balance in the treasury. This duty had been complied with by the commissioners of Lake county, and at the time of the issuance of the bonds in question their records showed that the constitutional limit had been exceeded and the purchaser of the bonds could have ascertained this fact by a simple inspection thereof. In differentiating certain cases

where the recitals involved were held to amount to an estoppel, Mr. Justice Gray said:

"In those cases in which this court has held a municipal corporation to be estopped by recital in its bonds to assert that they were issued in excess of the limit imposed by the Constitution or statutes of the state, the statutes, as construed by the courts, left it to the officers issuing the bonds to determine whether the facts existed which constituted the statutory or constitutional condition precedent, and did not require those facts to be made a matter of public record."

But he said:

"If the statute expressly requires those facts to be made a matter of public record, open to the inspection of every one, there can be no implication that it was intended to leave that matter to be determined and concluded, contrary to the facts so recorded, by the officers charged with the duty of issuing the bonds."

And continuing he said that—

The case at bar "cannot be distinguished in principle from Dixon County v. Field, or from Lake County v. Graham. The only difference worthy of notice is that in each of those cases the single fact required to be shown by the public record was the valuation of the property of the county; whereas, here two facts are to be shown, the valuation of the property and the amount of the county debt. But, as both these facts are equally required by the statute to be entered on the public records of the county, they are both facts of which all the world is bound to take notice, and as to which, therefore, the county cannot be concluded by any recitals in the bonds."

This covers the five cases relied on by defendant's counsel. I have considered them in detail in order to make plain just what they stand for, i. e. what is their value in disposing of the case we have in hand. The fact that the recitals there involved were held not to work an estoppel does not require that it be held that the recital here involved does not do so. Those cases can require such a holding only in the event that the principles there applied require it. This, it will be found, they do not do. On the contrary, principles there recognized, though not applied require that it be held that the recital here involved does work an estoppel. But before leaving these cases for good and coming directly to that in hand, we would summarize them so as to make plain the principles there applied and recognized.

As heretofore stated, they may be divided into two classes. Buchanan v. Litchfield belongs to the one class. That class is where the recital does not work an estoppel because not broad enough to cover the fact whose existence is essential to the validity of the bonds. Dixon County v. Field, Doon Township v. Graham, and Sutliff v. Lake County belong to the other class. That class is where, though the recital is broad enough to cover that fact, there is no authority in the officers issuing the bond to make it. Lake County v. Graham belongs to both classes, in that it was held that the recital involved was not broad enough and though broad enough was not authorized. In Sutliff v. Lake County the recital there involved was substantially the same as that in Lake County v. Graham. But there it was treated as broad enough and the case disposed of solely on the ground that it was not authorized. This is the important and primary classification to be

made of these cases. It is possible, however, to realign and make another or secondary classification of them. According to this, the first, Buchanan v. Litchfield, and the last, Sutliff v. Lake County, belong to the one class, and the intermediate ones, Dixon County v. Field, Lake County v. Graham, and Doon Township v. Cummins, belong to the other. The ground of this classification is that in the second class the amount of the bonds issued itself, without reference to any other indebtedness, exceeded the constitutional limit and the amount of the issuance was shown in the face of the bonds; whereas, in the first class the amount of the bonds issued did not of itself without reference to any other indebtedness exceed the limit. It was less than the limit. In the second class, therefore, all the purchaser of the bonds had to do in order to determine whether the limit was being exceeded was to ascertain what the taxable property of the county was, and this could be readily ascertained by reference to the last previous assessment thereof. In the first class, in order to do this he had to ascertain, in addition, the amount of the existing indebtedness of the county. Without it, it was impossible to determine whether the limit was being exceeded or not. And the two cases belonging to this class differed in this that in the one, i. e. Buchanan v. Litchfield, the amount of the existing indebtedness could not be readily ascertained by the purchaser, and in the other, Sutliff v. Lake County, it could. This was due to the fact that the statute of Colorado required the county commissioners to make semiannual statements on their records of the existing indebtedness of the county and they had complied with the requirements; whereas, the statute of Illinois made no such requirement, or any that was its equivalent, and there was no such statement in existence. This difference in fact caused a difference in decision in Sutliff v. Lake County from what would have been the decision in Buchanan v. Litchfield had the court felt it necessary to make a decision, on that feature of the case. In the former it was held because of that requirement that the recital did not work an estoppel. In the latter it would have been held because of the absence of such requirement that the recital did work an estoppel had it been broad enough to cover the fact essential to the validity of the bonds.

[3] I gather, therefore, from this that, if provision is not made for the ready ascertainment of the truth as to a fact whose existence is essential to the issuance of bonds, authority on the part of the officers having authority to issue them to determine and to make a statement by way of recital in the bonds as to the existence of such fact will be implied, and the municipality whose bonds are thus issued will be estopped to dispute the truth of the recital as against a bona fide purchaser for value.

The sum of the principles applied and recognized in these cases is this: A municipality is so estopped where the recital is broad enough to cover the essential fact if there is authority on the part of the officers authorized to issue its bonds to make the recital. It is not estopped if the recital is not broad enough or if there is not authority to make it. And authority to make it will be implied if no provision is made for a purchaser readily ascertaining the truth in regard thereto.

[4, 5] This case is now ready to be disposed of in accordance with these principles. It is unlike all the cases cited and relied on, in that the invalidity claimed is not that the bonds themselves exceed the constitutional limit or are in violation of the Constitution. The position is that they are invalid to the extent claimed because the indebtedness thereby funded was invalid because created in violation of the Constitution, in that there was not a previous two-thirds vote authorizing its creation. These bonds were issued under authority of section 1857, Ky. St., whereby the fiscal court of any county is empowered to fund, in the manner prescribed, any money owed or debts contracted in the construction, repair, or building or remodeling of any courthouse, jail, or other public building, bridges, or turnpikes. It is possible for a county to be so indebted legally and hence to be in a position that it is to its interest to fund such indebtedness. It may have been incurred before the present Constitution, and even afterwards, without there being any question as to its legality. It may have been incurred on the faith of surplus revenues not subsequently applied in payment thereof or upon a two-thirds vote when not incurred on the faith of surplus revenues. The Legislature had power to confer on the fiscal court power to fund such indebtedness. Undoubtedly said section should be construed to confer power to fund only such indebtedness as has been legally incurred. But it must also be construed as conferring power on the fiscal court to determine what of its county's indebtedness is legal and to make representation in regard thereto by way of recital in the funding bonds. There is no statute in Kentucky, as in Colorado, providing for semiannual or other statements setting forth the amount of the indebtedness of the county, much less the facts upon which its legality may be determined, so that the amount and legality thereof may be readily ascertained by the purchaser of its funding bonds. To determine the amount of the indebtedness and the character thereof, he must search the minutes of the fiscal court, any reports that may have been made to it, and the accounts of the court's treasurer, and to determine its legality he will have to investigate carefully all steps in order to its incurrence. If a purchaser has to go to that much trouble and cannot safely rely on the determination of the fiscal court and its representation made by way of recital in the bonds issued by it, there will be very few funding bonds sold. Hence there can be no question that under this statutory provision the fiscal court of the defendant had power to determine and make representation by way of recital in the bonds in question as to the validity of the indebtedness which they were issued to fund. Nor can there be any question as to the recital being broad enough to cover the matter of the validity of the indebtedness which the bonds were issued to fund. It was that those bonds were issued for the purpose of funding "Bath county's floating indebtedness contracted in the repairs of Bath county's courthouse and in the construction of turnpikes, roads and bridges in said county." This, of course, meant valid floating indebtedness. Unless it was valid, it was not an indebtedness. The conclusion, therefore, must be that the defendant is estopped to claim that the indebtedness, to fund which the bonds in question were issued, was invalid for any reason

whatever. And this conclusion is supported by two decisions of the Sixth Circuit Court of Appeals, to wit: Cadillac v. Woonsocket Institution, 58 Fed. 935, 7 C. C. A. 574; Kent v. Dana, 100 Fed. 56, 40 C. C. A. 281.

In the Cadillac Case it appeared that by the statute of Michigan, the city of Cadillac was empowered to borrow money and issue bonds in aid of making public improvements therein. It issued $30,000 worth of bonds thereunder and misapplied them in aid of the extension of a railroad which under the laws of Michigan was not a public improvement. The purchaser received them with full notice of their misapplication, and hence they were void in his hands. These bonds were subsequently refunded under another statute authorizing the issuance of new bonds in the place of former bonds falling due. The new bonds contained a recital to the effect that they were refunding bonds issued to take up old bonds falling due. It was held that the city was estopped by reason thereof from setting up the invalidity of the original bonds as a defense to the suit on the new ones. Judge Lurton said:

"It seems to us that the representations made on the face of the bonds estops the city, as against a bona fide holder, from disputing the fact that these bonds were issued to take up old bonds falling due. Power was conferred by the act upon the common council to issue new bonds to take up bonds falling due. The question as to whether there were any such bonds is referred to the council. The old bonds, on the facts found by the circuit court, were at the least 'colorable obligations.' The council determined to issue new bonds, and take them up. It seems to us that upon these circumstances it did not devolve upon the purchaser of the new bond to look into the validity of the funded old bonds. He might well rely upon the representation made to him on the face of the bond, as to the existence of old 'bonds falling due.'"

In the Kent Case it appeared that by the statute of Ohio the municipal corporations thereof were empowered to issue bonds for the refunding of their indebtedness. The village of Kent issued certain bonds which contained a recital that they were "issued for the purpose of procuring the necessary means to refund and extend the time of payment of certain outstanding general fund bonds heretofore legally issued by said village, which, from its limits of taxation, the said village is unable to pay at maturity." This recital was false. The village had no such outstanding bonds, and the bonds containing the recital were issued in aid of a glass factory located in the village to which it had no right to grant aid. It was held that the village was estopped to deny the truth of the recital in a suit by a bona fide holder of the bonds. Judge Severens said:

"It must be admitted that the scheme of issuing the bonds of the village for the purpose of promoting a glass factory was unlawful, and the device of using an unquestioned power of the council of the village to give its obligations the appearance of validity was in point of law a great abuse of authority. But it is evident enough that the electors of the village, as well as the members of the council, were involved in the conspiracy to gain an unlawful end, by professing an honest and lawful purpose, and using the means permitted for such purpose. It would be an utter perversion of justice if, by such an exploit, the result finally worked out should be that the public, who have confided in the good faith and the integrity of the representations of those who sent the bonds into the market, should be made to pay the in-

tended bonus to the glass factory, while the promoters of the scheme reap‑ the benefits which were expected to result therefrom."

In the case of Hughes County v. Livingston, 104 Fed. 306, 43 C. C. A. 541, Judge Sanborn said:

"The existence or nonexistence of a debt which might be funded under this act was a fact which the board of county commissioners of this county was required to learn and to know in the ordinary discharge of the duties of its office. No funding bonds could have been issued in pursuance of the act of 1889, unless there was a county debt of the character described in that act to be funded. The existence of such a debt was the first fact which the board was necessarily compelled to ascertain and determine before it issued the bonds and made the certificate which they contained, and its recitals that these bonds were issued in pursuance of that act is a plain certificate that they were issued in place of a just and valid indebtedness of the county, which the act of 1889 authorized that board to fund."

The motion to reconsider order overruling motion to strike out is‑ overruled.