EDMUNDS, Respondent, *v.* CITY OF GLASGOW, Appel-
LANT.

(No. 6,828.)

(Submitted April 14, 1931. Decided May 8, 1931.)

[300 Pac. 203.]

*Mr. John M. Kline* and *Mr. Robert S. McKellar,* for Appellant, submitted a brief; *Mr. Kline* argued the cause orally.

*Mr. C. H. Roberts* and *Mr. James T. Shea,* for Respondent, submitted a brief; *Mr. Shea* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Plaintiff, the holder of a $1,000 bond issued by the defendant, recovered judgment thereon from which defendant appealed.

The action was tried to the court without a jury upon an agreed statement of facts showing: That at a special election held on January 12, 1909, the following question was submitted to the taxpayers of the town (now city) of Glasgow: "Shall the town of Glasgow issue bonds in the sum of $50,000 for the purpose of constructing a water plant and system for said town?" A majority of the taxpayers voting at the election voted in favor of the bond issue. Fifty bonds were issued and sold to John Nuveen & Company, in denominations of $1,000 each, and the proceeds expended in procuring a water supply and constructing a water system. The bonds were subsequently sold to various persons and are now in the hands of innocent purchasers for value, who purchased in reliance upon the recitals contained in the bonds and without notice of any infirmity in them. Taxes have been levied annually ever since to pay the interest but the principal is unpaid and now overdue. After issuing the bonds the town was indebted in the total sum of $64,885.12, which was 11.41% of its total assessed valuation of $568,182. The legality of the bond issue has never been questioned. To the credit of the city it should be stated that it is not now endeavoring to repudiate the bonds. It desires to refund them and has met with difficulty in the sale of refunding bonds on the ground that the original issue was void; hence this action was brought to test their validity as the basis for the issuance and sale of refunding bonds.

Section 6 of Article XIII of our Constitution, after limiting the indebtedness of cities and towns to 3% of the value of the taxable property therein, contains this provision: "provided, however, that the legislative assembly may extend the limit mentioned in this section, by authorizing municipal corporations to submit the question to a vote of the taxpayers, when such increase is necessary to * * * procure a supply of water for such municipality which shall own and control said water supply and devote the revenues derived therefrom to the payment of the debt."

Subdivision 64 of section 3259, Revised Codes of 1907 (now sec. 5039, Rev. Codes 1921), which was in effect when the bonds were issued, after limiting town and city councils in contracting any indebtedness to 3% of the total assessed valuation of the taxable property of the city or town, contains these three provisions: First. "Provided, that no money must be borrowed on bonds issued for the construction, purchase, or securing of a water plant, water system, water supply, or sewerage system, until the proposition has been submitted to the vote of the taxpayers affected thereby of the city or town, and the majority vote cast in favor thereof." Second. "And further provided that an additional indebtedness shall be incurred, when necessary, to construct a sewerage system or procure a water supply for the said city or town which shall own or control said water supply and devote the revenue derived therefrom to the payment of the debt. The additional indebtedness authorized, including all indebtedness heretofore contracted, which is unpaid or outstanding, for the construction of a sewerage system, shall not exceed ten per centum over and above the three per cent heretofore referred to, of the total assessed valuation of the taxable property of the city or town as ascertained by the last assessment for state and county taxes." Third. "And provided further, that the above limit of three per centum shall not be extended, unless the question shall have been submitted to a vote of the taxpayers affected thereby and carried in the affirmative by a vote of the majority of said taxpayers who vote at such election."

The circuit court of appeals of the ninth circuit, in the case of *City of Bozeman* v. *Sweet, Causey, Foster & Co.*, 246 Fed. 370, held that under this statute, when bonds are proposed to be issued which will bring the total indebtedness of the city in excess of 3% of the total assessed value of its property but within the additional 10% authorized by it, the specific question of extending the constitutional limit of indebtedness of 3% must be submitted to the taxpayers affected, and that it is not enough to merely submit the question whether bonds in a stated amount and for the prescribed purpose shall be

issued. The attack made on the bonds involved in that case came before the bonds had been sold and delivered. Here the bonds, as above noted, have been sold. The city has obtained and expended the proceeds from their sale for the purpose for which the bonds were issued.

The question before us is whether the city, as contended by plaintiff, is estopped from asserting that the bonds are illegal.

Each bond contains these recitals: "This bond is issued by the said Town for the purpose of providing funds for constructing a water plant and system in said Town, the same to be owned and operated by said Town, in accordance with a vote in favor thereof by more than a majority of the taxpayers in said Town, qualified to vote at a special election duly called and held therein on January 12, A. D. 1909, pursuant to ordinances duly passed by the Council of said Town, and in all respects in full compliance with the provisions of the Statutes and Constitution of the State of Montana. And it is hereby certified and recited, that all things, acts and conditions required by the Constitution and laws of the State of Montana, to happen and be done and performed precedent to and in the issuance of this Bond, have happened and been properly done and performed in regular and due form and time as required by law; that the total indebtedness of said Town, including this Bond, does not exceed any constitutional or statutory limitation, and that provision has been made for the collection of a direct annual tax sufficient to pay the interest hereon and the principal hereof when due."

The bonds are signed by the mayor and attested by the town clerk, with the municipal seal attached. These are the proper officers empowered to sign the bonds. (Sec. 3457, Rev. Codes 1907, now sec. 5281, Rev. Codes 1921.) The city is not contending that the officers did not have authority to make the recitals in the bonds in question. It is expressly stipulated, and the court found, that they had authority so to do. And as against bona fide purchasers, the authority on the part of the officers having authority to issue the bonds will be implied

to extend to the making of recitals of facts essential to their validity. (*Dietrich* v. *Bath County*, 292 Fed. 279; *George A. Eyer & Co.* v. *Mercer County*, 292 Fed. 292.) Furthermore, the bonds recite that the town, by its council, caused the corporate seal to be affixed to the bonds and caused them to be signed by the mayor and town clerk. Under such circumstances the city could not contend, as against bona fide holders, that they were signed by the officers without its authority. (47 C. J. 1249, note 74.)

"Where, innocent persons invest money in the bonds of a municipality because of authorized recitals of its officers, the bonds should be sustained unless an insuperable legal obstacle prevents." (44 C. J. 1248.) This rule does not apply, however, where there is a lack of power on the part of the municipality to issue the bonds. (44 C. J. 1248; *White* v. *City of Chatfield*, 116 Minn. 371, 133 N. W. 952.) But here the municipality was not lacking in power to issue the bonds.

The constitutional limit of indebtedness of 3% may be extended by the legislative assembly (sec. 6, Art. XIII, supra). This it did by subdivision 64 of section 3259, supra. Whether that Act limits the power to create an additional indebtedness to 10% of the assessed valuation of the property of the municipality in addition to the 3% when the purpose of the indebtedness is to procure a water supply, as distinguished from a sewerage system, in view of the "second" proviso of the Act quoted supra, need not here be determined, for the total indebtedness here is within the maximum of 13% if we assume that 13% is the maximum of indebtedness for a water supply. In consequence, the municipality had the power, if properly exercised, to issue the bonds in question to the extent that it did.

"It has been laid down that, if the laws are such as that there might under any state of facts or circumstances be lawful power in a municipality or quasi-municipality to issue its bonds, it may by recitals therein estop itself from denying that those facts or circumstances existed." (44 C. J. 1249.) And "the rule that recitals in municipal bonds that the con-

ditions precedent to their issuance have been fulfilled are conclusive in favor of bona fide purchasers, and estop the municipality to deny their truth, applies in full force when the statute requires a petition or the consent of the voters or taxpayers as a condition precedent to the issuance of the bonds.'' (44 C. J. 1251; and see note in L. R. A. 1915A, 954, 961, note 142, 963.) And recitals in municipal bonds that the constitutional and statutory limit of indebtedness has not been exceeded creates an estoppel as against innocent purchasers where, as here, there is nothing on the face of the bonds to indicate that the recitals are untrue. (*Gunnison County* v. *Rollins*, 173 U. S. 255, 43 L. Ed. 689, 19 Sup. Ct. Rep. 390; see, also, note in L. R. A. 1915A, 946; 44 C. J. 1252.)

Where, as here, the recital is that everything required by law to be done and performed before executing the bonds had been done and performed, the municipality is estopped to dispute the truth of the recitals as against bona fide holders of the bonds. (*Waite* v. *City of Santa Cruz*, 184 U. S. 302, L. R. A. 1915A, 936, 46 L. Ed. 552, 22 Sup. Ct. Rep. 327; 19 R. C. L. 1004; and see *Board of County Commrs.* v. *Coler & Co.*, 190 U. S. 437, 47 L. Ed. 1126, 23 Sup. Ct. Rep. 811; *Town of Climax* v. *Burnside*, 150 Ga. 556, 104 S. E. 435; *Hauge* v. *City of Des Moines*, 207 Iowa, 1209, 224 N. W. 520; *Hayden* v. *Town of Aurora*, 57 Colo. 389, 14 Pac. 183; *Henderson County* v. *Sovereign Camp W. O. W.*, 12 Fed. (2d) 883; 2 Dillon on Municipal Corporations, 5th ed., sec. 914 et seq.; Simonton on Municipal Bonds, p. 258.)

The entire bond issue being within the 3% and the additional 10% debt limitation, assuming that the additional 10% limitation applies to a debt incurred for procuring a water system, is a binding obligation upon the defendant city under the circumstances here, by reason of the recitals in the bonds and the fact that they are in the hands of bona fide holders, and the district court properly so held.

The judgment is affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, FORD and MATTHEWS concur.