CLERIHEW, RESPONDENT, v. CITY OF BAKER, APPELLANT.

(No. 8,025.)

(Submitted November 2, 1939.   Decided November 21, 1939.)

[96 Pac. (2d) 269.]

318

Cause submitted on briefs of counsel.

*Mr. Dancil R. Young,* for Appellant.

*Messrs. Wood & Cooke* and *Mr. Al Hansen,* for Respondent; *Messrs. Fletcher, Dorsey, Barker, Colman & Barber,* of the Bar of Minneapolis, Minnesota, of Counsel.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an action by an innocent purchaser to recover from defendant upon two interest coupons issued in connection with certain funding bonds. Judgment went for plaintiff and defendant appealed.

The facts leading up to the issuance of the bonds are these: In 1914 an election was held in the city of Baker at which a majority of the electors voting thereat, favored extension of the limit of indebtedness of the city over and above the three per cent. fixed by the Constitution, to the extent of $25,000 for the purpose of acquiring a water system and supply; bonds in that sum were issued, but the proceeds were insufficient to complete the water system and from 1914 to 1919 the city issued and registered warrants with which to complete the project. The warrants thus issued, with accrued interest to 1919, aggregated $75,000. In that year an election was called by the city to vote upon the question of issuing funding bonds in the sum of $75,000 to retire the warrants. The election carried and the bonds were subsequently, and in 1920, issued and sold. Principal and interest were discharged in full on the registered warrants, and up to and including July 1, 1938, the city regularly paid all interest coupons resulting from the 1920 funding bond issue. The validity of this bond issue is the only question presented on this appeal.

The bonds in question recite: "This Bond is issued by the City of Baker to borrow money in exchange for and in order to redeem and pay a like amount of outstanding, legal, warrant indebtedness * * * . And it is hereby certified, recited and warranted * * * that all things, acts and conditions required by the Constitution and Laws of the State of Montana to exist and to happen and to be done and performed precedent to and in the issuance of this bond, in order to constitute the same the valid and binding obligation of said City, do exist and have happened and been done and performed in regular and due form and time; that the total indebtedness of said

City, including this bond, does not exceed any constitutional or statutory limitation. * * * The faith, credit and all of the taxable property of said City are hereby irrevocably pledged for the punctual payment of the interest and redemption of the principal of this bond, respectively, as the same becomes due and are payable, as aforesaid.''

The attack upon the bonds is based upon section 6, Article ▮▮▮ XIII, of the state Constitution, which limits the indebtedness of cities and towns to three per cent. of the value of the taxable property therein. That section also contains this provision: ''Provided, however, that the legislative assembly may extend the limit mentioned in this section, by authorizing municipal corporations to submit the question to a vote of the taxpayers affected thereby, when such increase is necessary * * * to procure a supply of water for such municipality which shall own and control said water supply and devote the revenues derived therefrom to the payment of the debt.''

The legislature by subsection 63 of section 5039, Revised Codes, has authorized cities and towns to extend the constitutional limit to the extent of an additional ten per cent. of the total assessed valuation of the taxable property of the city or town upon a favorable vote of the taxpayers affected when the increase is necessary to procure a supply of water. Here, it is true that in the election of 1914 the only extension made by the vote of the people was an extension to the amount of $25,000. There was no authorization by the voters to issue warrants in excess of the three per cent. limit. However, both the Constitution and statute authorized the city to extend the debt limit for water purposes to the full limit of thirteen per cent. of its assessed valuation, had the proper steps been taken to do so. Hence, the city had the power, if properly invoked, to contract an indebtedness up to thirteen per cent. of its assessed valuation for water purposes.

In view of the broad recitals in the bonds above quoted, and in view of the fact that the attack here comes after the issuance and sale of the bonds and when they are in the hands of innocent holders, the case is controlled by that of *Edmunds* v. *City*

*of Glasgow,* 89 Mont. 596, 300 Pac. 203, 86 A. L. R. 1052. By virtue of the holding in that case, the city is estopped to dispute the truth of the recitals as against bona fide holders of the bonds. In that case we held, in line with the authorities generally, that if the laws are such that there might under any state of facts or circumstances be lawful power in a municipality to issue its bonds, it may by recitals therein estop itself from denying that those facts or circumstances existed.

The rule is also that where municipal bonds recite that they are issued for the purpose of funding the existing debt of the city, and the city is authorized to issue such bonds, it is estopped, as against a bona fide holder, to set up that the antecedent indebtedness was invalid. (See 44 C. J. 1253, note 23, and cases therein cited, including that of *Waite* v. *Santa Cruz,* 184 U. S. 302, 22 Sup. Ct. 327, 46 L. Ed. 552.) That the city had authority to fund the existing indebtedness is apparent from sections 5285 et seq., Revised Codes of 1921, then in effect.

It has been suggested that we cannot determine what the ▮ assessed valuation of the taxable property of the city of Baker was in 1914, and, for that reason, that we are not able to determine whether the power existed in the city even by a favorable vote to incur an indebtedness equal to that represented by the registered warrants in addition to the $25,000 bond indebtedness authorized at that time. The record here shows that the total valuation of the taxable property in 1919 was over $1,600,000. If it had one-half of that valuation in 1914, then the city would have had the power, had it proceeded properly, to have incurred the indebtedness which it did incur by the issuance of the warrants. In any event, if the valuation was such that the city was without power in 1914, when properly invoked, to create an indebtedness to the extent represented by the warrants, it was incumbent upon the city to make that fact appear in the record. In the absence of a showing to that effect, we will presume that the valuation was substantially the same in 1914 as in 1919, or at least that it was not less than one-half of the 1919 valuation.

We call particular attention to the fact that, as in the case of *Edmunds* v. *City of Glasgow,* supra, the attack here was not made before the bonds had been sold and delivered, but comes some eighteen years after their issuance and after the payment of the warrants from the proceeds of the bonds, and after payment of the interest on the bonds during that period. For the reasons appearing in the *Edmunds Case,* the city is estopped from now questioning the validity of the bonds.

The district court properly rendered judgment for the plaintiff. The judgment is affirmed.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES MORRIS, ERICKSON and ARNOLD concur.