ARNOLD, APPELLANT, v. CITY OF MILES CITY ET AL.,
RESPONDENTS.

(No. 3,208.)

(Submitted November 30, 1912.   Decided December 14, 1912.)

[128 Pac. 915.]

*Cities and Towns—Indebtedness—Constitutional Limit—Additional Indebtedness—Legality.*

1.   Where a city's existing indebtedness incurred under the constitutional three per cent limit (Art. XIII, sec. 6) has by reason of payments thereon fallen below that limit, or because of the increase of the assessed valuation of its taxable property a sufficient margin within such limit is left for the purpose, it may, irrespective of any legally incurred indebtedness under the ten per cent limit (Rev. Codes, sec. 3259, subsec. 64), contract an additional debt for general purposes.

*Appeal from District Court, Custer County; Sydney Sanner, Judge.*

ACTION by E. A. Arnold against the city of Miles City, its mayor, clerk and council, for the purpose of enjoining the sale of certain bonds to secure funds with which to construct a bridge. Judgment for defendants, from which plaintiff appeals. Affirmed.

Cause submitted on briefs of counsel.

*Mr. Geo. W. Farr*, for Appellant.

*Messrs. Loud & Campbell*, for Respondents.

MR. JUSTICE SMITH delivered the opinion of the court.

This is an action brought by the plaintiff, a resident taxpayer and elector of the city of Miles City, against the city and its mayor and council, for the purpose of enjoining the sale of a $5,000 issue of bonds for constructing a bridge, the issuance of said bonds having been authorized by the taxpayers of the city. The complaint discloses that the assessed valuation of the taxable property within the city as ascertained and determined by the assessment for state and county taxes for the year 1911 was

$3,179,041. Under such assessed valuation the three per cent limit of indebtedness that might ordinarily be incurred by the city under the authority of section 6 of Article XIII of the state Constitution and subdivision 64 of section 3259, Revised Codes, would be the sum of $95,371.23. However, at the time of the passage of the resolution authorizing the submission to the qualified voters of the question of the issuance of the bridge bonds, the outstanding bonded indebtedness of the city was the sum of $282,000, of which amount $57,000 represents a bonded indebtedness under the three per cent limit, and the balance of $225,000 represents bonded indebtedness under the ten per cent limit. It was necessary, at the time the indebtedness was incurred, to resort to the ten per cent limit in order that the city might acquire a water plant and sewerage system, and the bonded indebtedness of $225,000 was duly and regularly incurred for those purposes. If the present issue of bonds of $5,000 is sold, the amount of indebtedness which the city may now legally incur under the three per cent limit will not be exceeded, unless it is precluded from making any valid issue of bonds under that limit until such time as the value of the taxable property of the city shall exceed in amount such sum as that three per cent thereof shall be in excess of the entire indebtedness of the city under either the three per cent or the ten per cent limit, or both.

The only question presented by the appeal is whether a [1] city, after having necessarily and legally incurred an outstanding indebtedness for a water supply and a sewer system, under the ten per cent limit, can thereafter incur an additional indebtedness of $5,000 under the three per cent limit for building a bridge, the existing indebtedness of the city, incurred under the three per cent limit, having fallen below that limit by reason of payments thereon or on account of the fact that the assessed valuation of taxable property has increased so as to leave a sufficient margin within the three per cent limit.

Section 6 of Article XIII of the state Constitution reads as follows: "No city, town, township or school district shall be allowed to become indebted in any manner or for any purpose to an amount, including existing indebtedness, in the aggregate

exceeding three per centum of the value of the taxable property therein, to be ascertained by the last assessment for the state and county taxes previous to the incurring of such indebtedness, and all bonds or obligations in excess of such amount given by or on behalf of such city, town, township or school district shall be void; Provided, however, that the legislative assembly may extend the limit mentioned in this section, by authorizing municipal corporations to submit the question to a vote of the taxpayers affected thereby, when such increase is necessary to construct a sewerage system or to procure a supply of water for such municipality which shall own and control said water supply and devote the revenues derived therefrom to the payment of the debt.''

Subdivision 64 of section 3259, Revised Codes, reads thus: ''Powers of City Council. The city or town 'council has power: * * * 64: To contract an indebtedness on behalf of a city or town, upon the credit thereof, by borrowing money or issuing bonds for the following purposes: Erection of public buildings, construction of sewers, bridges, waterworks, lighting plants, supplying the city or town with water by contract, the purchase of fire apparatus, the construction or purchase of canals or ditches and water rights for supplying the city or town with water, and the funding of outstanding warrants and maturing bonds; provided, that the total amount of indebtedness authorized to be contracted in any form, including the then existing indebtedness, must not, at any time, exceed three per centum of the total assessed valuation of the taxable property of the city or town, as ascertained by the last assessment for state and county taxes; provided, that no money must be borrowed on bonds issued for the construction, purchase or securing of a water plant, water system, water supply, or sewerage system, until the proposition has been submitted to the vote of the taxpayers affected thereby of the city and town and the majority vote cast in favor thereof; and, further provided, that an additional indebtedness shall be incurred, when necessary, to construct a sewerage system or procure a water supply for the said city or town which shall own or control said water supply and devote the revenue derived therefrom to the payment of the

debt.   The additional indebtedness authorized, including all
indebtedness heretofore contracted, which is unpaid or outstand-
ing, for the construction of a sewerage system, shall not exceed
ten per centum over and above the three per cent heretofore
referred to, of the total assessed valuation of the taxable property
of the city or town as ascertained by the last assessment for state
and county taxes; and, provided further, that the above limit
of three per centum shall not be extended, unless the question
shall have been submitted to a vote of the taxpayers affected
thereby and carried in the affirmative by a vote of the majority
of said taxpayers who vote at such election.   *   *   *   ''

When the taxpayers of Miles City voted in favor of issuing
bonds to construct a·sewerage system and procure a water sup-
ply, they thereby voted to extend the three per cent limit for
those purposes and the limit was thereby extended.   It was only
on account of the fact that the three per cent limit had already
been reached, or almost reached, that it became necessary or
legal to resort to an election for the purpose of invoking the con-
stitutional provision allowing an extension of the limit to ten
per cent for those express purposes.   Had an election not been
held, these bond issues would have been void.   They were given
life and validity by virtue of the election.   Not any general
indebtedness can be incurred by a city in excess of three per
cent of its then assessed valuation.   It is only for special pur-
poses, to wit, sewerage systems and water supplies, that cities
may incur indebtedness in excess of the three per cent limit when
authorized by the taxpayers.   By express language the framers
of the Constitution declared that the revenues derived from these
plants and systems must be devoted to the payment of the debts
incurred by the issuance of the bonds.   This fact goes to prove
that such indebtedness was to be regarded as in a class by itself.
The three per cent limit may be extended, for the special pur-
poses above indicated, but not otherwise.   It will be noted that
the constitutional provision does not limit the amount to which
the legislature may authorize the taxpayers to extend the indebt-
edness.   The legislative assembly, in subdivision 64 of section
3259, *supra,* referred to the ten per cent limit as an ''additional

indebtedness" "over and above three per centum." The legis-
lature has also declared, in effect, that the three per cent limit
is *extended* by the vote of the taxpayers, thus again manifesting
an intention to regard the ten per cent limit as an addition to
the amount originally authorized by the Constitution. If the
contention of the plaintiff were to be upheld, the result would
be that if after the three per cent limit has once been reached,
the taxpayers of the city or town voted to extend the limit for
the special purposes mentioned, no general indebtedness could
thereafter be incurred until the total indebtedness was reduced
below a three per cent limit, regardless of the extent to which the
assessed valuation of property has increased. Another result
would be that even though a city discharged its entire indebted-
ness incurred within the three per cent limit, if it also had an
indebtedness incurred under the ten per cent limit, it could
thereafter incur no general indebtedness whatsoever until that
incurred under the ten per cent limit was discharged, or reduced
to such an amount within the three per cent limit as would leave
a margin within that limit. This was manifestly not the inten-
tion of the law-making bodies. The intention was to compel a
city to refrain from becoming indebted for general purposes in
an amount in excess of three per cent of the value of its taxable
property. So long as it keeps within this limit, regard being
had to the assessed valuation at the time the indebtedness is
proposed to be contracted, it is proceeding according to law.

The question with which we have to deal was not involved in
the case of *Butler* v. *Andrus*, 35 Mont. 575, 90 Pac. 785, cited
by the appellant.

The defendants in the court below filed a general demurrer to
the complaint. This demurrer was sustained, plaintiff refused
to further plead, and judgment was entered in favor of the
defendants. Plaintiff appeals from the judgment.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY con-
cur.