CITY OF BOZEMAN et al. v. SWEET, CAUSEY, FOSTER & CO. et al.

(Circuit Court of Appeals, Ninth Circuit. December 3, 1917.)

No. 2959.

MUNICIPAL CORPORATIONS ☞918(3)—BONDS—VALIDITY—ELECTION NOTICE.

Notice of an election for the issuance of waterworks bonds declared that such election should be held for the purpose of submitting to the taxpayers the question of the issuance of waterworks bonds in the sum of $235,000 on the credit of the city. Const. Mont. art. 13, § 6, declares that no city shall be allowed to become indebted in any manner or for any purpose to an amount including existing indebtedness in the aggregate exceeding 3 per cent. of the value of the taxable property therein, provided that the legislative assembly may extend the limit mentioned by authorizing municipal corporations to submit the question to a vote of the taxpayers affected thereby, when such increase is necessary to construct a sewerage system or to procure a supply of water for such municipality. Rev. Codes Mont. § 3259, subd. 64, confers power on cities to contract an indebtedness upon the credit thereof by borrowing or issuing bonds for the erection of public buildings, construction of sewerage, waterworks, etc., provided that the total amount of indebtedness incurred, including the then existing indebtedness, shall not exceed 3 per cent. of the total valuation of the taxable property, and that no money should be borrowed on bonds issued for the construction, purchase, or securing of a water plant, etc., until the proposition has been submitted to the vote of the taxpayers, provided that additional indebtedness may be incurred when necessary to procure a water supply for the city which shall own or control such supply, and devote the revenue derived therefrom to the payment of the debt, but that the indebtedness authorized, including all outstanding indebtedness, should not exceed 10 per cent. over and above the 3 per cent. referred to. The section concludes with the declaration that the limit of 3 per cent. shall not be extended, unless the question shall have been submitted to a vote of taxpayers affected thereby and carried by a majority. *Held* that, as statutes allowing municipalities to incur obligations in excess of those originally permitted should be strictly construed the notice of the bond election must be deemed insufficient to advise the electors that the bond issue would increase the city's indebtedness beyond the 3 per cent. limit, and hence bonds issued pursuant to the election are invalid.

Appeal from the District Court of the United States for the District of Montana; Geo. M. Bourquin, Judge.

Suit by Sweet, Causey, Foster & Company, a corporation, and others, against the City of Bozeman, a corporation, and others. From a decree for complainants, defendants appeal. Affirmed.

H. D. Kremer and George Y. Patten, both of Bozeman, Mont., for appellants.

E. C. Day and Thomas A. Mapes, both of Helena, Mont., for appellees.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge. The appellees sued to compel the appellants to return certain checks deposited as earnest money in the purchase of certain municipal bonds issued by the city of Bozeman for waterworks and sewer purposes. The bonds were issued pursuant to the authority

of a special election held in Bozeman on April 3, 1916. For the purposes of the case it is only necessary to quote part of the notice of the election for the waterworks bonds:

"Said special election will be held for the purpose of submitting to the taxpayers, as defined by sections 468 and 469 of the Revised Codes of Montana of 1907, who are also possessed of the qualifications of electors in said city of Bozeman, the question of the said city issuing waterworks bonds upon the credit of the said city in the sum of $235,000, the proceeds from the sale thereof to be used as follows," etc.

At public auction appellees, after being awarded the bonds, deposited certified checks as security for completing the purchase. An agreement was made between the appellees and the city, providing, in effect, that if upon examination the appellees asserted that the proceedings leading up to the issuance of the bonds were illegal, they must establish such illegality, but that if the proceedings were legal, and appellees refused to accept the bonds, then the city was to retain the amount of the certified checks as liquidated damages; but, if the proceedings were illegal, then appellees would not have to take the bonds, and checks which they had deposited were to be returned to them. Appellees refused to accept the bonds after they were issued, basing refusal upon three grounds:

(1) "That at the time of the submission of the question of the issuance of the bonds to the taxpayers affected thereby the city of Bozeman was indebted in excess of 3 per cent. of the taxable value of the property of the city as the same appeared upon the assessment roll of said city for the year 1915; that the question of extending the limit of indebtedness of said city for the purpose of procuring a water supply or the construction of sewers in excess of the 3 per cent. limit of the taxable property and within the limit of 10 per cent. of the taxable property, as provided by the Constitution of the state of Montana, was never submitted to the taxpayers affected."

(2) "That the issuance of the $235,000 of waterworks bonds and $70,000 of sewer bonds would in fact increase the indebtedness as fixed by the Constitution of the state of Montana, assuming that the question of extending the limit of indebtedness beyond the 3 per cent. limit had been properly submitted to the taxpayers."

(3) "That the question of the issuance of the $235,000 of waterworks bonds, of which $100,000 were to be used for funding bonds and $135,000 for the construction of additions to the water supply, was a double question, and was submitted to the taxpayers of said city as one question, and that the taxpayers affected thereby were never permitted the opportunity of expressing their will upon the two separate questions."

After a hearing the court held that the issue of bonds was illegal, for the reason that the notices of election were insufficient, in that the question of extending or exceeding the 3 per cent. limit of indebtedness was not submitted to and voted upon by the electors. Decree was entered for the return of the certified checks, and appeal to this court was taken.

Section 6, art. 13, of the Constitution of Montana, is as follows:

"No city, town, township or school district shall be allowed to become indebted in any manner or for any purpose to an amount, including existing indebtedness, in the aggregate exceeding three per centum of the value of the taxable property therein, to be ascertained by the last assessment for the state and county taxes previous to the incurring of such indebtedness, and all bonds or obligations in excess of such amount given by or on behalf of

such city, town, township or school district shall be void: Provided, however, that the legislative assembly may extend the limit mentioned in this section, by authorizing municipal corporations to submit the question to a vote of the taxpayers affected thereby, when such increase is necessary to construct a sewerage system or to procure a supply of water for such municipality which shall own and control said water supply and devote the revenues derived therefrom to the payment of the debt."

The Legislature of the state (Revised Codes of 1907, § 3259, subd. 64) conferred power upon cities:

"To contract an indebtedness on behalf of a city or town, upon the credit thereof, by borrowing money or issuing bonds for the following purposes, to wit: Erection of public buildings, construction of sewers, bridges, waterworks, lighting plants, supplying the city or town with water by contract, the purchase of fire apparatus, the construction or purchase of canals or ditches and water rights for supplying the city or town with water, and the funding of outstanding warrants and maturing bonds: Provided, that the total amount of indebtedness authorized to be contracted in any form, including the then existing indebtedness, must not at any time exceed three per centum of the total assessed valuation of the taxable property of the city or town, as ascertained by the last assessment for state and county taxes; provided, that no money must be borrowed on bonds issued for the construction, purchase or securing of a water plant, water system, water supply, or sewerage system, until the proposition has been submitted to the vote of the taxpayers affected thereby of the city or town and the majority vote cast in favor thereof; and, further provided, that an additional indebtedness shall be incurred, when necessary, to construct a sewerage system or procure a water supply for the said city or town which shall own or control said water supply and devote the revenue derived therefrom to the payment of the debt; the additional indebtedness authorized, including all indebtedness heretofore contracted, which is unpaid or outstanding, for the construction of a sewerage system, shall not exceed ten per centum over and above the three per centum, heretofore referred to, of the total assessed valuation of the taxable property of the city or town as ascertained by the last assessment for state and county taxes; and, provided further, that the above limit of three per centum shall not be extended, unless the question shall have been submitted to a vote of the taxpayers affected thereby and carried in the affirmative by a vote of the majority of said taxpayers who vote at such election."

The first paragraph of subdivision 64 is the grant of power to the councils of cities to contract debt in either of two ways for any of the certain definite purposes named in the statute. Without such grant, of course, the council could incur no debt.

The second paragraph is really but a substantial reiteration of the words of limitation upon the amount of debt which may be contracted, as imposed by the constitutional clause heretofore quoted.

The third paragraph restricts the powers of the council as to borrowing money on bonds for construction, by forbidding any money to be borrowed on security of bonds for the specified purposes until the "proposition" has been submitted to a vote of taxpayers. The submission of the "proposition" means laying before the taxpayers the broad, basic proposed plan: Shall the city borrow money at all on bonds as proposed to be issued for securing a water supply or plant or system or sewer system? It is this proposed scheme which, if carried on, will affect the taxpayers, and it is for them to say whether they wish the city to proceed to inaugurate the scheme of proposed improvement by issuing obligations to carry it out.

The fourth paragraph reaches out to the matter of incurring additional debt, should such action be necessary to execute the proposed scheme to construct or buy. It is easy to understand how, under the limits of usually prescribed rates of taxation, a city ordinarily cannot procure a water system or construct sewage plants; hence, in order that such improvements may be brought within reach, not only may the usually provided limit of debt be incurred, but additional obligations are authorized, subject, however, to this qualification: That, in the event of the debt being incurred, the city shall own or control the supply to be acquired and devote the revenue to accrue from such system to the payment of the debt; and, furthermore, never shall the whole debt, additional and that which is unpaid of the debt primarily contracted, exceed 10 per cent. over and above the 3 per cent. of assessed valuation permitted by the previous paragraph of the statute.

The next paragraph has nothing directly to do with restriction of the power of a city to incur the amount of the debt contemplated as necessary to be incurred, for, as we have seen, that has already been granted and circumscribed. But it does prohibit any extension beyond the 3 per cent. limit; that is, it does prohibit the incurring of the additional 10 per cent. involved in the proposed extension of the limit, unless "the question" shall have been submitted to a vote of the taxpayers and carried as provided for. Now, when we consider that the whole of this last paragraph relates solely to the subject of increasing or assuming possible additional debt, it seems very reasonable to say that it is for the assurance of those vitally interested, the taxpayers, that the city cannot be put under the obligation attending such extension of debt, without first having been advised that it is proposed to extend the 3 per cent. limit of taxation, and without being asked whether they affirm or disaffirm the plan.

By applying this understanding of the law, we find that the notice of election in the present case failed by separate statement or any direct language to bring to the attention of the taxpayers that in what was proposed there would be an extension of the limit of the 3 per cent. fixed by law, and no question was asked whether such extension should be had. Appellant argues that, as the question of issuing bonds for waterworks in a stated specific amount, which was in fact in excess of the 3 per cent. limit upon the credit of the city, was submitted, that was the main issue, and that there was included in it the proposed extension of the 3 per cent. limit, and therefore that, by voting in favor of issuing the bonds, the taxpayers voted to extend the limit.

In a way, this reasoning is not without force. But it does not satisfy us as meeting the view that the question specially referred to in the last paragraph of the statute is the positive and specific one, whether it is the will of the taxpayers that the council shall impose upon the city additional debt, over and above the 3 per cent. limit fixed by law. By mandate of the statute this essential interrogatory shall be submitted, to the end that the taxpayers may know of proposed additional debt. Authority to issue bonds in a stated sum for a water and sewage system construction does not necessarily advise the taxpayer that the proposed

debt will be additional to the 3 per cent. allowed, and in fact it might not be. Any presumption which may be indulged in would be that the bonds are not in excess of the more general limit.

The cases which are cited by appellant as bearing upon the question are Carlson v. City of Helena, 39 Mont. 104, 102 Pac. 39, 17 Ann. Cas. 1233, and Arnold v. Miles City, 46 Mont. 481, 128 Pac. 915. But the · point here under investigation was not involved in the Carlson Case. The issue turned upon whether authority to incur debt included authority to issue bonds, and in a careful analysis of the statute the court, through the learned Chief Justice, held that it did. But, as already said, the truth of that proposition does not carry with it authority to exceed the 3 per cent. limit. It is significant that in the Carlson Case the construction we ·put upon the statute was observed, for the notice of the special election stated that it was "for the purpose of ascertaining the will of the taxpayers to be affected thereby, and that authority may be given and power conferred upon the city counsel to increase the indebtedness of said city over and above the 3 per cent. limit fixed by law by the issuance," etc.

In Arnold v. Miles City, supra, the court stated that the "only question presented" was whether a city, after having necessarily and regularly incurred outstanding debt for a water supply and sewage system under the 10 per cent. limit, could thereafter incur an additional debt under the 3 per cent. limit for building a bridge, the existing debt, incurred under the 3 per cent. limit, having fallen below that limit by reason of payments made thereon. In the course of the opinion the court said that, when the taxpayers voted in favor of issuing bonds to construct a sewage system and procure a water supply, they thereby voted to extend the 3 per cent. limit for those purposes, and the limit was thereby extended. But it does not appear how the question of extending the limit for the water supply or sewage system was submitted, although the statement of facts says that it was necessary at the time the debt was incurred to resort to the 10 per cent. limit in order that the city might acquire a water plant and sewage system, and that the bonded debt was duly and regularly incurred for those purposes. The case, therefore, did not involve the question now before us.

Kerlin v. City of Devil's Lake, 25 N. D. 207, 141 N. W. 756, Ann. Cas. 1915C, 624, also cited by the appellants, was like the Carlson Case, supra, in that the official ballot specifically stated that the purpose was to increase the debt, and to issue bonds of the city in an amount equal to 3 per cent. "over and above the 5 per cent. limit of indebtedness." Other cases cited do not directly aid in the solution of the question before us. Nor are we materially helped by examination of section 3454 of the Revised Codes of Montana of 1907. That section is a declaration of powers conferred.

Without carrying the discussion any further, our judgment is that the principle that statutes authorizing .municipalities to incur obligations in excess of those which are ordinarily permitted to be incurred should ·be strictly construed, and that the intent of the statutes referred to in this opinion was that the taxpayers should be advised that the proposed debt would be in excess of the 3 per cent. limit, and that such

advice in the form of a question should be specifically and clearly stated. Failure to pursue the requirements of the statute constrains a ruling against the validity of the bonds.

Affirmed.